DONALD CRERAR · *et al.*

*v.*

NORMAN WILLIAMS *et al.*

*Filed at Ottawa, June 19, 1893.*

1. CHANCERY PRACTICE — *overruling a demurrer to bill for proof of facts not alleged.* A defendant in a bill can not complain that a demurrer to the bill was not overruled in order to allow him to make proof of facts not alleged in the bill. A demurrer admits only such facts as are well pleaded.

2. WILLS—*devise, whether of real or personal estate.* Where the fourth clause of a will consisting of fifty-two clauses or paragraphs requires the executor to convert the entire estate (except a few articles) into cash, and the legacies throughout the will are of personal property, the will must be construed as a devise of personal property only.

3. SAME—*conversion of land into cash.* Where the conversion of the property into money directed by the testator, is not for the payment of the residuary bequest only, but for the payment of all the bequests, the purpose of the conversion will not be accomplished until, at least, the legacies admitted to be valid are paid.

4. SAME—*void and lapsed legacies fall into residuary devise.* It is the well settled rule that all lapsed or void gifts of personal property fall into a general residuary bequest, instead of being treated as intestate estate descending to the heir-at-law, unless a contrary intention on the part of the testator clearly appears. The law raises a presumption in favor of the residuary legatee against every one except the particular legatee.

5. SAME—*statute relating to descents construed.* Section 12, of chap. 39, R. S., entitled "Descent," which provides that "all such estate, both real and personal, as is not devised or bequeathed in the last will and testament of any person, shall be distributed in the same manner as the estate of an intestate," does not conflict with the rule above stated. The statute has no application to testate estates.

6. If, by the law governing the construction of wills, property is testate estate, the statute of descent has nothing to do with its distribution—it is disposed of by the will. The statute has no proper application to lapsed or void legacies in a will containing a valid general residuary bequest.

7. WILLS—*duty of courts to sustain a will.* Wills must be sustained, and the intention of the testator given effect by the courts, whenever it can

be done without violating established rules of law or some public policy. Such rule is applicable in the construction of every will, when its validity, or any part of it, is called in question.

8. SAME—*devise of residuum.* If a clause in a will directs the executors and trustees to set apart a fund to raise an income out of which to pay all costs, charges, etc., arising in the administration of the estate and executing the will, and gives the executors and trustees the power to fix arbitrarily the amount of that fund, and in their own unlimited discretion to say when it shall go to the rest, remainder and residue of the estate, and to expend the fund for purposes other than the charity named in the will, it would doubtless be pronounced void. But this would not effect in any way the validity of the general residuary devise.

9. SAME—*executors enjoined for arbitrary acts under power.* Where the executors and trustees of a testator are authorized by will to set apart so much of the testator's estate as they may think necessary to pay costs, expenses, etc., a court of chancery may restrain any attempt made on the part of the executors and trustees to act arbitrarily or unreasonably in exercising the authority thus conferred on them.

10. SAME—*construed—setting apart fund for charitable bequest.* A testator, by the 49th clause of his will, authorized his executors and trustees to set apart so much of his estate or invest such a sum of money as in their judgment might seem necessary and proper, and to pay from the income thereof all costs, charges and expenses, and directed that any surplus income should yearly be paid over and devoted to the purposes set forth in item 50, and when in the judgment of such executors and trustees it was proper, the principal sum provided by item 49 should be paid over, etc. By item 50 a devise was made of all the residue of the testator's estate for a free public library and its endowment: *Held,* that section 49 of the will was to be construed together with the 50th clause, and read as though it were a part of it, or as though it had followed that clause instead of preceding it. Any fund set apart under the 49th clause is to be treated as a part of the estate bequeathed by the 50th clause.

11. The two clauses of the will, 49 and 50, taken together, do not give arbitrary power to the executors and trustees to fix the amount of the principal fund to be set apart under the 49th clause, or to say when it shall be paid over to the residuum. They are authorized to set apart a proper amount to raise an income to pay certain charges and expenses, all of which must be reasonable. That clause gives the executors and trustees no greater power than they would have had without it.

12. When a testator directs that the trustees named in his will shall be paid "reasonable fees and compensation," such fees and compensation become a legal charge against his estate, and together with the costs and charges of administration and carrying out the provisions of the will, will be payable out of the rest, remainder and residue of the estate,

under the supervision and direction of a court of chancery, without any other specific directions to that effect. A court of equity would, in the absence of any such provision, compel the payment thereof, at the same time protecting the estate against all unreasonable or illegal charges.

13. CHARITY—*defined.* A charity, in a legal sense, may be defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise bearing the burdens of government. It is immaterial whether the purpose is called charitable in the gift, if it is so described as to show that it is charitable in its nature.

14. A gift "for the erection, creation, maintenance and endowment" of a free public library, in a city like Chicago, falls within the definition of a charity. The statute of charitable uses is in force in this State, including the statute of 43d Elizabeth. Our statute of charities does not repeal either directly or by implication any other law of charitable uses in force in this State.

15. CHARITIES—*favored by the courts.* It is the fixed policy of the law to uphold charitable bequests, and our courts incline strongly in favor of charitable gifts, and take special care to enforce them.

16. The part in a clause of a will making a charitable gift for a free public library, which provides the manner of putting the library into practical operation, may be held impossible of execution, and the bequest still be sustained and carried into effect by a court of equity. A court of equity will consider charity as the substance, and if the mode pointed out in the conveyance or will for carrying it into effect fails, will provide another mode by which the charity may take effect.

17. SAME—*perpetuity in devise to charitable use.* If a testator ties up his property for a time, by possibility longer than a life or lives in being and twenty-one years and nine months, and then gives it over to a charity, the gift to charity is void, because of the perpetuity in the first taker.

18. But a gift may be made to a charity not *in esse* at the time, to come into existence at some uncertain time in the future, provided there is no gift of the property in the first instance, or perpetuity in a prior taker.

19. If the charitable trust is not to vest until after the determination of a prior gift, and that prior gift may, by possibility, last longer than the time allowed by law, the gift over to charity will be void, because of the perpetuity in the first taker. In order to bring a gift to charity, which is to vest in the future, within the law against perpetuities under

the rule stated, there must be a prior gift. Where there is no bequest to a person or corporation other than the charity, the gift to charity will not be void, under the rule prohibiting perpetuities.

20. CHARITIES—*conditioned upon future uncertain event.* If the gift in trust for charity is itself conditioned upon a future and uncertain event, it is subject to the same rules and principles as any other estate depending for its coming into existence upon a condition precedent. If the condition is never fulfilled the estate never arises. If it is so remote and indefinite as to transgress the limits of time prescribed by the rules of law against perpetuities, the gift fails *ab initio.*

21. A testator gave and devised to his executors and trustees the rest and residue of his estate after the payment of expenses, costs and legacies, for a free public library in the city of Chicago, the words used being, "I give, devise and bequeath," showing a present gift, and directed his executors and trustees to cause an act of incorporation to be procured to carry out the purpose of this bequest, and expressed a desire as to the character of the building to be erected: *Held,* that the gift is neither conditional, nor upon a future and uncertain event. In such case the organization of the corporation mentioned in the will is not a condition precedent to the vesting of the gift.

22. By a clause of his will a testator gave, devised and bequeathed to his executors and trustees all of his property to sell, etc., to enable them to carry out the purposes and intents of his will. After such present gift, a subsequent clause of the will provided, that "I give, devise and bequeath all the rest, remainder and residue of my estate for the erection, creation, maintenance and endowment of a free public library," etc. *Held,* that the gift for the library was a gift *in presenti,* and that the object of the testator's bounty was not the corporation to be created for the purpose of giving effect to the gift, but the public, and that the gift was complete, without reference to any of the suggestions or directions of the testator as to how the bequest shall be carried into effect.

23. In such case the fact that the time within which the corporation is to be organized is not limited, and it may not come into existence within the period allowed for the vesting of future estates, in no way affects the validity of the gift. The corporation may never be created, and still, the gift, being to a charitable use, will be upheld.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook County, the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. F. A. STIRTAN, Mr. A. W. BROWN, Mr. A. B. JENKS, and Mr. W. A. CUNNEA, for the appellants:

If any one of our claims for relief in the bill is good, then the general demurrer should have been overruled. *Brown* v. *Hogle*, 30 Ill. 119.

The validity of a disposition of land must be governed exclusively by the *lex rei sitae.* 1 Redf. on Wills, 397; Wharton on Conflict of Laws, secs. 273, 278, 288, 597; Rorer on Inter-State Law, 4, 44, 168, 204, 207, 209, 210; *West* v. *Fitz*, 109 Ill. 425; *McCartney* v. *Osburn*, 118 id. 403.

As to the rule against perpetuities, see 2 Washb. on Real Prop. (3d ed.), 651; Gray on Perpetuities, secs. 201, 214, 202, 237; Lewis on Perpetuities, 169 *et seq.;* Marsden on Perpetuities, 309; Challis on Real Prop., 133; 2 Redf. on Wills, 568; 1 Jarman on Wills, 222, 231, 233; Perry on Trusts, sec. 377; *Rhoads* v. *Rhoads*, 43 Ill. 239; *Waldo* v. *Cummings*, 45 id. 421; *Carroll* v. *E. St. Louis*, 67 id. 142; *Starkweather* v. *Am. Bible Society*, 72 id. 50; *Schettler* v. *Smith*, 41 N. Y. 344; *Knox* v. *Jones*, 47 id. 389; *Cruikshank* v. *Home of the Friendless*, 113 id. 337; *Booth* v. *Baptist Church*, 126 id. 215.

When gifts to charities are not subject to the rule against perpetuities. Challis on Real Prop., 144; Gray on Perpetuities, sec. 589, 590, 591, 600, 605 and 606; 3 Lewin on Trusts, 1299 *et seq.;* Marsden on Perpetuities, 309; 2 Black. Com., 174, 268; Perry on Trusts, sec. 736, 737.

The Statute of Uses in this State would not operate to vest the legal title in the corporation, and whatever kind of title there was would be in the trustees, and the statute does not operate to transfer it; it is not executed by the statute, not even in charity cases. See Rev. Stat. Ill., 1 Starr. & Curtis, title Conveyances, sec. 3, chap. 30; *Kirkland* v. *Cox*, 94 Ill. 400; *Mecham* v. *Steele*, 93 id. 135; *Kellogg* v. *Hale*, 108 id. 164; *Preachers' Aid Society* v. *English*, 106 id. 125; *Potter* v. *Couch*, 141 U. S., 296.

To constitute a charitable devise over a prior gift the gift must be certain. If the devise contains any words from which it may be implied that the first taker has the power of withdrawing any part of the subject from the object of the bequest, or applying it to his own use, it will prevent the subject of the gift from being certain. Hill on Trustees, 119; *Knight* v. *Knight*, 3 Beav. 173; *Howard* v. *Carusi*, 109 U. S. 725; *Williams* v. *Worthington*, 49 Md. 572.

As to the fatality of uncertainty, see Perry on Trusts, sec. 711; 2 Pomeroy Eq. Jur., secs. 1014, 1017, 1070; *Holland* v. *Alcock*, 108 N. Y. 323; *Levy* v. *Levy*, 33 N. Y. 107.

Any words by which it is expressed or from which it may be implied that the trustee has the discretionary power of withdrawing the whole or any part of the subject from the object of the testator's wish or request, will prevent the subject of the gift from being certain. 2 Redfield on Wills, 2d ed., page 507; Hill on Trustees, 3d ed., sec. 116; Boyle on Charities, p. 316; Perry on Trusts, secs. 729, 711, 713; *Flint* v. *Hughes*, 6 Beav. 342; 1 Jarman, pages 330, 195, 196; *Russel* v. *Jackson*, 10 Hare, 213; *Ommancey* v. *Butcher*, 1 Turn. & Russ. 260; *Lechmere* v. *Lavie*, 2 M. & K., 197; *Wilson* v. *Major*, 11 Vesey, 205; *Knight* v. *Knight*, 3 Beav. 148, 174; *Pierson* v. *Garnet*, 2 Bro. C., 45, 230; 1 Jarman on Wills, 5th Am. ed., 645; *Blaird* v. *Blaird*, 2 Cox, 349; *Chapman* v. *Brown*, 6 Vesey, 404; Perry on Trusts, sec. 160; *Wood* v. *Cox*, 2 Mylne & Craig, 684; *Fontain* v. *Ravenal*, 17 Howard, 391; *Curtis* v. *Larkin*, 5 Beavan, 147; *Blight* v. *Hartnoll*, 19 Chancery Division, 294; *Williams* v. *Kershaw*, 5 Law Journal (N. S.) 84.

As to a gift of charity being subject to the rules of conditional trusts, and to the law of perpetuities as to the vesting of the gift, see Gray on Perpetuities, sec. 606; Marsden on Perpetuities, page 309; Perry on Trusts, secs. 736, 737; 3 Lewin on Trusts, foot page 1299; 2 Redfield on Wills,

2d ed., 508 and notes; *Rhoads* v. *Rhoads*, 43 Ill. 239, 252; *Carroll* v. *City of East St. Louis*, 67 Ill. 568, 572; *Starkweather* v. *Bible Society*, 72 Ill. 59.

As to the courts being powerless to substitute a shorter time or a speedier event, or interfering with the trustees' discretion, see Lewis on Perpetuities, 593, 596; Gray on Perpetuities, sec. 674; *Boughton* v. *Boughton*, 1 House of Lords Cases, 406; *Curtis* v. *Larkin*, 5 Beavan, 147; *Smith* v. *Cunningham*, 13 L. R. Jr., 480; *Armory* v. *Lord*, 5 Selden, 403; *Jocelyn* v. *Nott*, 44 Conn. 55; Re Fisher's Estate, 8 New York Supplement, 10; *People* v. *Simonson*, 126 N. Y. 299; *Cruikshank* v. *Home of Friendless*, 113 N. Y. 337; 1 Cox Chancery Cases, 324.

Mr. DELOS McCURDY, also for the appellants:

An executory devise is only an indulgence allowed to a man's last will and testament, when otherwise the disposition would be void. *Tenney* v. *Agar*, 12 East, 253; *Doe, etc.,* v. *Maxey*, 12 East, 589; *Phillips* v. *Deakin*, 1 Maule & S. 744; *Reeve* v. *Long*, Carth. 310 and 4 Mod. 284; *Purefoy* v. *Rogers*, 2 Saund. 380; *Southby* v. *Stonehouse*, 2 Ves. Sen. 616; *Marshall* v. *Hill*, 2 Maule & S. 608; *Wealthy* v. *Bosville*, Rep. K. B. temp. Hardw. 258; *Carwardine* v. *Carwardine*, 1 Eden's Ch. Ca. 27; *Doe* v. *Considine*, 6 Wall. 458; *Wolfe* v. *Van Nostrand*, 2 N. Y. 442; *Hawley* v. *Northampton*, 8 Mass. 38; *Willis* v. *Bucher*, 3 Wash. C. C. 374; *Parker* v. *Parker*, 5 Metc. 138; *Leslie* v. *Marshall*, 31 Barb. 566; *Manderson* v. *Lulsens*, 23 Pa. St. 33; *Proprietors* v. *Grant*, 3 Gray, 142.

An executory devise respects personal estate as well as real. Dyer, 74 Pl. 18; 1 Roll Abr. 610 Pl. 4; Brook Devise, Pl. 13; *Atkinson* v. *Hutchinson*, 3 P. Wms 258; 2 Atkin, 82, 321; *Marshall* v. *Blew*, 2 Atk. 217; *Cadogan* v. *Kennett*, Cowp. 432; *Foley* v. *Barwell*, Cowp. 432, note; *Bank of Newcastle* v. *Countess of Lincoln*, 3 Ves. 392; S. C. 12 Ves. 233; *Smith* v. *Chen*, 2 Vern. 59; *Porter* v.

*Tournay,* 3 Ves. 311; *Diehl* v. *King,* 6 S. & R. 29; *Moffatt* v. *Strong,* 10 John. 12; *Westcott* v. *Cady,* 5 John, Ch. 534.

Where a future interest without a preceding estate, or a contingent interest unsupported by any preceding freehold, or any estate after a preceding vested fee, is limited by devise, such limitation, as it can not be good as a remainder, may take effect as an executory devise, provided it falls within the limits which the law prescribes for the validity of such executory estates. *Goodright* v. *Cornish,* 1 Salk. 226; *Clark* v. *Smith,* 1 Lut. 798; *Gore* v. *Gore,* 2 P. Wms. 28; *Hayward* v. *Stillingfleet,* 1 Atk. 422; *Fulmerston* v. *Stewart,* Cro. Jac. 592; *Wellcoke* v. *Hammond,* Cro. Eliz. 204; *Hinde* v. *Lyon,* 3 Leon. 54; *Pells* v. *Brown,* Cro. Jac. 590; Fearne on Ex. Devises, 395, 396; 4 Kent's Com. 269, 270.

"It is a clear and settled rule of law that an executory devise can not be prevented or defeated by any alteration of the estate out of which or after which it is limited, or by any mode of conveyance." *Jackson* v. *Robins,* 16 Johns. 539, per Kent, Chancellor; *Jackson* v. *Bull,* 10 Johns. 19; *Exrs. of Moffat* v. *Strong,* 10 Johns. 12; *Patterson* v. *Ellis,* 11 Wend. 259; *Ide* v. *Ide,* 5 Tyng, 500; *Nightingale* v. *Burrill,* 15 Pick. 104; 4 Kent's Com. 269, 270; *Pells* v. *Brown,* Cro. Jac. 590; *McDonald* v. *Walgrove,* 1 Sand. Ch. 277; *Burleigh* v. *Clough,* 52 N. H. 267; *Proprietors* v. *Grant,* 3 Gray, 142; *Downing* v. *Wherein,* 19 N. H. 9; *Andrews* v. *Roy,* 12 Rich. L. 544.

That a devise *in futuro* to an artificial being to be created by the legislature, and enabled to take, may be held good as an executory devise, if limited to vest within the prescribed period, is held in Angell & Ames on Corp., sec. 184; *Porter's Case,* 1 Co. R., 24; *Sutton's Case,* 10 Co. 32; *Atty. Genl.* v. *Bowyer,* 3 Ves. 714; *Inglis* v. *Sailors' Snug Harbor,* 3 Pet. 115–144; *McGirr* v. *Aaron,* 1 Pen. & W. 49; *Sanderson* v. *White,* 18 Pick. 336, 337; *Miller* v. *Chittenden,* 2 Iowa, 315; *Burrill* v. *Boardman,* 43 N. Y. 254;

*Shipman* v. *Rollins*, 98 id. 311; Fearne on Exec. Devises, 495 and 534.

Another settled rule in regard to an executory devise is that it must be so limited that by the terms of its creation it must take effect within the period prescribed for the vesting of future estates.

If the limitation be in such terms that it may or not vest within that time, it is void. *Cadell* v. *Palmer*, 1 Cl. & Fin. 372, 423; 4 Kent's Comm., 267; 1 Jarm. on Wills, 221; 4 Cruise Dig., tit. 32, ch. 24, sec. 18; *Nightingale* v. *Burrill*, 15 Pick. 111; Atk. on Conveyancing (2d ed.), 264; *Prop. Brattie Church*, etc., v. *Grant*, 3 Gray, 142; Lewis on Perpetuities, 162, 172; *Hooper* v. *Hooper*, 9 Cush. 122; *Thorndike* v. *Loring*, 15 Gray, 391; *Fosdick* v. *Fosdick*, 6 Allen, 41; *Odell* v. *Odell*, 10 Allen, 1; *Loring* v. *Blake*, 98 Mass. 253; *Sears* v. *Putnam*, 102 Mass. 5; *Jocelyn* v. *Nott*, 44 Conn. 55; *Donohue* v. *McNicholl*, 61 Pa. St. 73; *Patterson* v. *Ellis*, 11 Wend. 259; *Hawley* v. *James*, 16 id. 120; *Schettler* v. *Smith*, 41 N. Y. 344; *Knox* v. *Jones*, 47 id. 389–391; *Yates* v. *Yates*, 9 Barb. 324; *Gott* v. *Cook*, 7 Paige, 540; *Boynton* v. *Hoyt*, 1 Denio, 53; *Brattle Square Church* v. *Grant*, 3 Gray, 152; *Sears* v. *Putnam*, 102 Mass. 5.

If a gift is made to a charity on a contingent event, and the happening of the event is a condition precedent to the gift taking effect, then, if the condition is too remote, the gift to the charity is void.

"If the gift in trust for charity is itself conditional upon a future and uncertain event, it is subject, in our judgment, to the same rules and principles as any other estate depending for its coming into existence upon a condition precedent. If the condition is never fulfilled, the estate never arises; if it is so remote and indefinite as to transgress the limits of time prescribed by the rules of law against perpetuities, the gift fails *ab initio.*" *Chamberlayne* v. *Brockett*, L. R., 8 ch., 206, 211; *Cherry* v. *Mott*, 1 Myl. and Cr. 123, 131, 132;

*Attorney General* v. *Goulding*, 2 Bro. C. C. 428; *Attorney General* v. *Bishop of Oxford*, 4 Ves. 431; *Attorney General* v. *Whitechurch*, 3 Ves. Jr. 141; *Corbyn* v. *French*, 4 Ves. 418; *Clark* v. *Taylor*, 1 Drew. 642; *Carberry* v. *Cox*, 3 Ir. Ch. 231; *Sims* v. *Quinlan*, 16 Ir. Ch. 191; *De Themmines* v. *Bonneval*, 5 Russ. 288; *Jocelyn* v. *Nott*, 44 Conn. 55; 1 Jarman on Wills (4th ed.), 245 *et seq.;* Tudor, L. C., on Real Prop. (3d ed.), 580, 581.

Mr. JAMES L. HIGH, Messrs. WILLIAMS, HOLT & WHEELER and Messrs. LYMAN & JACKSON, for the appellees.

The fiftieth clause of the will creates a valid trust for charity.  See *Heuser* v. *Harris*, 42 Ill. 425; *Andrews* v. *Andrews*, 110 id. 223; *Hunt* v. *Fowler*, 121 id. 269.

A charitable devise to a corporation not yet in existence will be sustained.  *Inglis* v. *Sailors' Snug Harbor*, 3 Pet. 99; *Ould* v. *Washington Hospital*, 95 U. S. 303; *Russell* v. *Allen*, 107 id. 163; *Jones* v. *Habersham*, 107 id. 174; *Swasey* v. *Am. Bible Soc.*, 57 Me. 523; *Atty. Genl.* v. *Downing*, Ambl. 550; S. C., 1 Deck. 414.

The doctrine of equitable conversion rests upon the familiar principle that in construing a will, like any other instrument by which property is sought to be transferred, equity will presume that to be done which ought to be done, and will, therefore, impress upon the property the character of either personalty or realty, as may accord with the expressed intention of the testator.  *Baker* v. *Copenbarger*, 15 Ill. 103; *Jennings* v. *Smith*, 29 id. 116; *Rankin* v. *Rankin*, 36 id. 293; *Craig* v. *Lestie*, 3 Wheat. 563; *Peter* v. *Beverly*, 10 Pet. 532; Bispham's Eq., sec. 307.

Lapsed and void legacies fall into the residuum.  *Cambridge* v. *Rous*, 8 Ves. 12; *Leake* v. *Robinson*, 2 Mer. 363; *In re Batchelder*, 147 Mass. 465; *Tindall's Executors* v. *Tindall*, 24 N. J. Eq., 512; *Taylor* v. *Lucas*, 14 N. C. 215; *Swinton* v. *Eggleston*, 3 Rich. 201; *Fite* v. *Beasley*, 12 Lea. 328; *King* v. *Strong*, 9 Paige, 94; *King* v. *Wood-*

CRERAR *et al.* *v.* WILLIAMS *et al.* 635

Brief for the Appellees.    Opinon of the Court.

*hull,* 3 Edw. Ch. 79; *Banks* v. *Phelan,* 4 Barb., 80; *Massey's Appeal,* 88 Pa. St. 479; *Drew* v. *Wakefield,* 54 Me. 291; *Ward* v. *Mitchell,* 32 Ga. 623; *Thweatt* v. *Redd,* 50 id. 181; *Orrick* v. *Boehm,* 49 Md. 72; *Mills* v. *Newberry,* 112 Ill. 123; *Woman's Union Missionary Society* v. *Mead,* 131 id. 338.

Bequests to be applied in the erection of water-works for the use of the inhabitants of a town; for the purpose of erecting a town-house for transacting town business; for planting and renewing shade trees in a city, have been held valid as charitable bequests.    *Jones* v. *Williams,* Amb. 651; *Coggeshall et al.* v. *Trustees of New Rochelle,* 7 Johns. Ch. 292; *Dexter* v. *Gardner,* 7 Allen, 243; *Swasey* v. *Bible Society,* 57 Maine, 523; *Masters* v. *Masters,* 1 Peere Williams, 421; *Mussett* v. *Bingle,* The Weekly Notes, 1876, page 170; *Attorney General* v. *Heelis,* 2 Sim. & St. 77; *Cresson's Appeal,* 30 Pa. St. 437; 2 Perry on Trusts, 4th edition, 687, 705; Lewin on Trusts, \*p. 106.

It is also the policy of the State to encourage the erection of monuments.    See chapter 21, paragraph 19, Hurd's Revised Statutes, 1889.

Mr. JOHN H. MULKEY, also for the appellees.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was a bill in chancery by appellants against appellees, praying that certain clauses in the last will of John Crerar, deceased, be declared void, and the bequests therein named decreed to them as heirs at law.

The Circuit Court of Cook county sustained a general demurrer to the bill, and entered a decree dismissing it at the costs of the complainants.

This is an appeal from the judgment of the Appellate Court affirming that decree.  A copy of the will, consisting of fifty-two paragraphs or clauses, was filed with and made a part of the bill.  The validity of the instrument as a whole is not questioned, but eight of the bequests therein

named are alleged to be void, for the reason that the language used by the testator is insufficient in law to make valid testamentary gifts. Those bequests are as follows:

"23. The silverware now at Tiffany's, and the books, pictures, ware, and furniture belonging to me, I direct to be distributed among my personal friends by my executors and trustees, in such manner as they shall deem best."

"25. I give and bequeath to the trustees of the Second Presbyterian Church of Chicago, for and on account of said church, so long as said church preserves and maintains the principles of the Presbyterian faith, the sum of one hundred thousand dollars ($100,000.00)."

"26. I give and bequeath to the trustees of the Second Presbyterian Church of Chicago, for and on account of the mission schools of said church, in Chicago, the sum of one hundred thousand dollars ($100,000.00), and it is my desire that the income derived from said sum of one hundred thousand dollars ($100,000.00) shall be employed by said trustees, in such manner as shall seem to them best and prudent, for the promotion and continuance of the mission schools of said church."

"33. I give and bequeath to the Chicago Bible Society the sum of twenty-five thousand dollars ($25,000.)"

"39. I give and bequeath to Norman Williams and Huntington W. Jackson, in trust, for and on account of the Chicago Literary Club, the sum of ten thousand dollars ($10,000.)"

"44. I give and bequeath to Norman Williams and Huntington W. Jackson the sum of one hundred thousand dollars ($100,000), to be expended by them in the erection of a collossal statue of Abraham Lincoln, such statue to be upon or within appropriate designs of stone, iron, bronze or other metal; the treatment of the subject, and the location of the statue to be determined by said Norman Williams and Huntington W. Jackson."

"49. I hereby authorize and empower my executors and trustees to set apart so much of my estate, or invest such a sum of money as in their judgment may seem necessary and proper, and to pay from the income thereof all costs, charges and expenses, including the payment mentioned in item second arising from, or in the course of the execution and administration of this will and its trusts. Any surplus income shall yearly be paid over and devoted to the purposes set forth in item 50th, and when, in the judgment of my said executors and trustees it is proper, the principal sum herein provided for shall be paid over and devoted to the purposes set forth in item 50th."

"50. Recognizing the fact that I have been a resident of Chicago since 1862, and that the greater part of my fortune has been accumulated here, and acknowledging with hearty gratitude the kindness which has always been extended to me, by my many friends and by my business and social acquaintances and associates, I give, devise and bequeath all the rest, remainder and residue of my estate, both real and personal, for the erection, creation, maintenance and endowment of a free public library, to be called 'The John Crerar Library,' and to be located in the city of Chicago, Illinois, a preference being given to the South Division of the city, inasmuch as the Newberry Library will be located in the North Division. I direct that my executors and trustees cause an act of incorporation, under the laws of Illinois, to be procured to carry out the purposes of this bequest, and I request that Norman Williams be made the first President thereof, and that, in addition to my executors and trustees, the following named friends of mine will act as the first Board of Directors in such corporation, and aid and assist my executors and trustees therein, namely: Marshall Field, E. W. Blatchford, T. B. Blackstone, Robert T. Lincoln, Henry W. Bishop, Edward G. Mason, Albert Keep, Edson Keith, Simon J. McPherson, John M. Clark and George A. Armour, or their survivors. I desire the build-

ing to be tasteful, substantial and fireproof, and that a sufficient fund be reserved over and above the cost of its construction, to provide, maintain and support a library for all time. I desire the books and periodicals selected with a view to create and sustain a healthy, moral and Christian sentiment in the community, and that all nastiness and immorality be excluded. I do not mean by this that there shall not be anything but hymn books and sermons, but I mean that dirty French novels and all skeptical trash and works of questionable moral tone shall never be found in this library.

I want its atmosphere that of Christian refinement, and its aim and object the building up of character, and I rest content that the friends I have named will carry out my wishes in these particulars."

The first four clauses of the will (more particularly the fourth) are pertinent to the questions raised in argument, and they are as follows:

"1. I hereby make, constitute and appoint my friends, NORMAN WILLAMS and HUNTINGTON WOLCOTT JACKSON, both of Chicago, Illinois, executors of this my last will and testament, and trustees of my estate, and the survivor of them, or their appointed successors, to have and to hold the same upon the trusts and subject to the conditions and limitations hereinafter mentioned."

"2. I hereby waive, as I have a right to do under the statutes in such case made and provided, the giving of bonds or security by my said executors and trustees. As they have been true friends in life so they will be when I am gone, and I entrust the management of my estate to their joint care. It is my wish that my executors and trustees shall only be accountable for what they receive, and not be charged with any loss unless it happen by their careless neglect or faulty attention; and I will and direct that they shall be paid, for the execution of this trust, reasonable fees and compensation, together with all costs and expenses incurred."

"3. I direct, that in case of the death, incapability or refusal to act of either of the foregoing executors and trustees, or their appointed successor, that the survivor shall appoint such executor and trustee within thirty days after said death, incapability or refusal to act of said executor and trustee, or the appointed successor, which appointment shall be approved of in writing by one of the Judges of the United States Circuit, or United States District Court, for the Northern District of Illinois."

"4. I give, devise and bequeath unto my said executors and trustees all of my property and estate of whatever name or nature, real, personal and mixed, and wherever situated, in trust, nevertheless, that is to say, upon the following trusts and conditions: to sell and dispose of all of my said property and estate, except as may be hereinafter specified, and convert the same into cash at such time or times and upon such terms and conditions as to my said executors and trustees shall seem meet, and to make, execute and deliver all deeds of conveyance and other instruments in writing as may be necessary and proper for that purpose, to exchange, invest and re-invest all or any of my property, compromise debts due my estate, and to do all things in the same manner as I might do if living, and as shall seem expedient and best to them to enable them to carry out the purposes and intents of this, my last will and testament."

The first ground of reversal urged is, that the Circuit Court erred in not overruling the demurrer to the bill, that the complainants might prove the laws of the States of New York, Iowa and Texas, applicable to the construction of said will, it being alleged in the bill, that the testator died seized of real estate situated in those States.

Waiving all other answers to this point, it is sufficient to say, the bill fails to allege what the laws of those States are in that regard, and they were not, therefore, the subject of proof. The demurrer admitted all facts well pleaded, but nothing more. It will scarcely be contended that a de-

murrer to a pleading should be overruled in order to allow a party to make proof of facts not alleged therein. The first point is clearly untenable.

It is not denied that there is an attempt, by the provisions of the fiftieth clause of the will, to make a general residuary bequest of all the testator's estate. Each of the other paragraphs called in question is an express gift of personalty, all except the first being in money. This naturally follows from the provisions made in the fourth paragraph, which requires the executors to convert the entire estate (except a few articles of personal property afterwards named) into cash. The legacies throughout the will are, therefore, of personal property, and the will must be so construed. Bispham's Principles of Equity, 307. As was said by Caton, Judge, in *Baker* v. *Copenbarger et al.*, 15 Ill. 104: "Here was a devise of real estate, which by the provisions of the will was to be converted into money, and that money distributed among the devisees."

This, it is admitted on all hands, must be treated as a devise of money, and not of land. See, also, *Jennings* v. *Smith*, 29 Ill. 116; *Rankin* v. *Rankin*, 36 id. 293.

It is true, that the directions to convert all of the property into money are stated to be for the purpose of carrying out the provisions of the will, but it does not, therefore, follow, as contended by counsel for appellant, that if by reason of the illegality of the residuary, or other clauses of the will, the gift or gifts therein fail, the purposes of the conversion will cease. The conversion directed by the testator is not for the payment of the residuary bequest only, or any particular legacy, and, therefore, the purposes of the conversion will not be accomplished until, at least, the legacies which are admitted to be valid are paid. But to say that the gifts made by the will are not gifts of personalty, and the will is not to be so construed because the bill questions the validity of those gifts, is to beg the whole question.

The case of *Haward* v. *Peavey*, 128 Ill. 430, in no way conflicts with what is here said. It was there held, that under the will of James Haward, the executors were given a power to sell real estate, but that no imperative duty to do so was imposed upon them, and, therefore, there was no equitable conversion of the land into money.

By the fourth clause of this will, the duty to convert all property into money is imperative. Not a single bequest can be found in this will which can be satisfied without the payment of money, except the thirty-second and that is to be paid in specific articles of personal property.

It is the well settled rule, that all lapsed or void gifts of personal property fall into a general residuary bequest, instead of being treated as intestate estate, descending to the heir at law, unless a contrary intention on the part of the testator clearly appears. The rule and reason for it are clearly stated in *Cambridge* v. *Rouse*, 8 Ves. 12, and substantially adopted in *Taylor* v. *Lucas*, 14 N. C. 215, as follows:

"No rule is better established as to personal estate, though it is otherwise as to real, that a residuary clause carries not only everything not disposed of, but everything that in the event turns out not to be disposed of, as by lapse and the other means specified in the cases. (1 Ves. Jun. 109, 110; Ambler, 138; 8 Ves. Jun. 25; 4 id. 732; 15 id. 509.) The law raises a presumption in favor of the residuary legatee against every one except the particular legatee."

This rule has been recognized and approved by this court in *Mills* v. *Newberry*, 112 Ill. 123, and *Woman's U. M. Society* v. *Mead*, 131 id. 338.

But it is insisted on behalf of appellants, that our statute has changed the rule as it existed at common law, and in support of that position, sec. 12, of ch. 39, R. S., entitled, "Descent," is cited and relied upon. That section is as follows:

"SEC. 12. All such estate, both real and personal, as is not devised or bequeathed in the last will and testament of any person, shall be distributed in the same manner as the estate of an intestate; but in all such cases the executor or executors, administrator or administrators, with the will annexed, shall have the preference in administering on the same."

The above cited decisions of this court are irreconcilable with the contention that this statute has changed the rule, as it formerly existed, and it is clear that the statute was intended to have no such effect. It does not purport to change or modify any of the rules of law applicable to the construction of wills, but only provides, as the title of the chapter in which it is found indicates, how property shall descend, which is not devised or bequeathed in the last will and testament of any person. If by the law governing the construction of wills property is testate estate, the statute of descents has nothing to do with its distribution—it is disposed of by the will.

There is nothing whatever in the will before us indicating an intention on the part of the testator that any part of his estate should, under any circumstances, be treated as intestate. On the contrary, he has attempted to dispose of all of his property, of every description, by his last will, executed in conformity with the provisions of law, and if he has succeeded in making a legal and valid bequest of all the "rest, remainder and residue of his estate," the law casts with that residuum all of his property not otherwise disposed of by the will. How, then, can it be said that any part of his estate is "not devised or bequeathed" in his last will and testament. Clearly the statute has no proper application to lapsed or void legacies in a will containing a valid general residuary bequest.

If, therefore, the fiftieth clause of this will is valid, appellants can take nothing by their bill, even though each of the other legacies questioned by them should be held

void, any such void legacies going to swell the general residuary estate, and not to the heirs at law of the testator.

Having reached the conclusion that said residuary clause is valid, and should be given effect, the remainder of this opinion will be devoted to that question alone.

As before said, the intention of the testator to dispose of all the remainder of his estate by said clause is therein unequivocally expressed.

That wills must be sustained, and the intention of the testator given effect by courts, whenever it can be done without violating establised rules of law, or some public policy, is a saying so often repeated that it has become trite; but, nevertheless, it expresses a rule applicable to the construction of every will, when its validity, or any part of it, is called in question.

All parties concede, that, in order to sustain the clause in question, it must be treated as an attempt on the part of the testator to make a bequest to charity, and while counsel for appellant do not concede that it is such, we do not understand them to seriously controvert it.

A comprehensive legal definition of a charity, or charitable use, is given by Gray, J., in *Jackson* v. *Phillips,* 14 Allen, 556 (approved by Perry in his work on Trusts, vol. 2, sec. 697) as follows: ''A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.''

That a gift ''for the erection, creation, maintenance and endowment of a free public library,'' in a city like Chicago,

falls within that definition, can not be seriously questioned.

All the cases to which our attention has been called, which recognize the statute of 43d Elizabeth as in force, hold that such gifts are to a charitable use. *Drura* v. *Natick*, 10 Allen, 176; *Dascom* v. *Marston*, 80 Maine, 223; *Donohue's Appeal*, 86 Pa. St. 306; *Heuser* v. *Harris, Exr.*, 42 Ill. 425, and other cases decided by this court are to the same effect.

But it is said the statute of charitable uses is not in force in this State. It is conceded that this court has repeatedly held that it is; but it is insisted that those decisions were made without the attention of the court being called to certain acts of the legislature, passed from time to time since 1833, that, now in force, being chapter 23, R. S. (S. C., vol. 1, 422), which provides for the regulation and maintenance of State Charitable Institutions. These statutes, counsel say, "operate to repeal any other statute of charitable uses, whatever, and none but charities whose title is vested in the State were intended to be or are embraced within it, and that consequently none but the State charities can come within the province of any Charitable Use act."

This position is unsupported by the citation of a single authority, or the suggestion of any legal principle upon which it can rest, and, we think, is wholly untenable. Certainly the acts referred to do not expressly repeal any other law of charitable uses in force in this State, nor is there, so far as we are able to discover, the slightest inconsistency between any of them and the law which they are claimed to repeal. It can not, therefore, be held that there is a repeal by implication. Nor do we find anything in the opinions rendered in the cases holding the statute of 43d Elizabeth in force here, which justifies the assumption that the laws of this State, in force when they were rendered, were not duly considered. On the contrary, in *Heuser et al.* v. *Harris, Exr., supra*, which was decided in 1867, it was

said: "There being no statute in this State prohibiting such bequests, is it not a fair inference the law-making power of this State has not regarded them impolitic?" thus showing that the statutes then in force were taken into consideration. The same reasons which have hitherto influenced the court to hold the statute of uses in force in Illinois still exist. Presumably this will, disposing of a large estate, most of which is given to charity, was made with reference to those decisions, and to now overrule them, thereby defeating the clearly expressed intention of the testator, could only be justified upon the ground that some overpowering reason demanded it. No reason whatever for so doing is shown, or can be conceived. The statute of charitable uses, then, being in full force in this State, and the bequest of the residuary estate of the testator being an attempt to make a bequest to charity, is that bequest valid?

The principal objection urged against it in this court is that it is violative of the "rule against perpetuities."

The argument on this point is somewhat extended, but the controversy between counsel for the respective parties arises rather from the different constructions placed upon the will than from conflicting views of the law. It is insisted on behalf of appellants, that while it is generally said by text writers and courts, that the law against perpetuties does not apply to conveyances, or bequests to charity, all that is meant by that language, is: "that after property once legally gets to a charity, the charity can thereafter hold it for all time, *i. e.* in perpetuity, but does not apply to property before it gets to the charity," and the argument proceeds upon the theory, that under the qualification of the general rule thus stated, gifts to charity, before they become vested, are subject to the rule against perpetuities, the same as are gifts to individuals. The authorities cited in support of this position do not sustain it.

We think the quotation made by the learned counsel from Perry on Trusts (vol. 2, sec. 736), announces a cor-

rect rule, viz.: "If a testator ties up his property for a time, by possibility longer than a life or lives in being and twenty-one years and nine months, and then gives it over to a charity, the gift to charity is void, *because of the perpetuity in the first taker.*" The rule thus stated does not, however, bear the construction placed upon it, as shown by the language itself, as well as that which immediately follows it, where the author says: "But a gift may be made to a charity not *in esse* at the time, to come into existence at some uncertain time in the future, provided there is no gift of the property in the first instance, or perpetuity in a prior taker. So, where property was given to one charity, to go over to another in a certain event, it was allowed to go over to the second charity, after a lapse of two hundred years, on the ground that it was no more a perpetuity in one charity than another."

Bispham, in his Principles of Equity, sec. 132, after stating that a charitable use is not subject to the ordinary rules prohibiting the creation of perpetuities, also says: "If, however, the charitable trust is not to vest until after the determination of a prior gift, and that prior gift may by possibility last longer than the time allowed by law, the gift over to charity will be void, *because of the perpetuity in the first taker.*" See, also, American and English Encyclopedia of Law, vol. 18, pp. 363, 364. It will thus be seen, that in order to bring a gift to charity, which is to vest in the future, within the law against perpetuities, under the rule cited, there must be a *"prior gift,"*— a *"first taker."*

In the gift under consideration there is no bequest to a person, or corporation, other than the charity therein named. In other words, there is by the terms of this will no prior gift, or first taker.

In *Andrews et al.* v. *Andrews*, 110 Ill. 230, this court said: "It is urged that this clause creates an estate in the nature of a perpetuity, which the law prohibits; that the

law will not permit estates in land to be tied up longer than for a life or lives in being and twenty-one years and, in case of a posthumous birth, nine months more, after the termination of the life estate; and as this clause prohibits the sale of the land for twenty-five years after the death of the last surviving tenant for life, the devise falls within the prohibition of the rule. This would seem to be true, unless it falls within the exception in favor of conveyances and devises to charitable uses. In the case of *Heuser* v. *Harris*, 42 Ill. 425, it was held that the statute of 43 Eliz., chapter 4, is in force in this State, and it operates to exclude conveyances and devises, for such uses, from the operation of the rule against perpetuities. This we regard the law of this jurisdiction, and the rule conforms to the adjudged cases in England under that statute, and those of the various States of the Union where that statute is in force."

By another branch of the argument of counsel for appellants, in support of the contention that this gift is in violation of the law of perpetuities, it is insisted that it is in the nature of an executory devise, and it is said, that: "the testator intended to limit a contingent future interest in the nature of an executory devise, the contingency depending upon the creation of a corporation, by the legislature, capable of taking, for the purposes expressed in the will and in perpetuity"—"that the creation of the corporation, with capacity to take for the purposes declared and limited in the will, is a condition precedent to the vesting of the gift," and it is contended upon the authority of *Chamberlain* v. *Brackett*, L. R., 8 Ch., 206, and other authorities cited: "If the gift in trust for charity is itself conditional upon a future and uncertain event, it is subject to the same rules and principles as any other estate, depending for its coming into existence upon a condition precedent; if the condition is never fulfilled, the estate never arises; if it is so remote and indefinite as to transgress the limits of time prescribed by the rules of law against perpetuities, the gift fails *ab initio*."

The answer to this position is, the gift in question is neither conditional, nor upon a future and uncertain event. The organization of the corporation mentioned in the will is not a condition precedent to the vesting of the gift.

The argument of counsel for appellants, upon this branch of the case, proceeds throughout upon the unwarranted assumption that the bequest to the John Crerar Library is a gift *in futuro.* When the fourth clause of the will is considered in connection with the fiftieth, it is clearly shown that the residuary bequest made by the fiftieth is in no sense executory. By the fourth clause, the testator says: "I give, devise and bequeath unto my said executors and trustees all of my property and estate of whatever name . or nature, real, personal and mixed, and wherever situated, in trust, nevertheless, etc., to sell, etc., to enable them to carry out the purposes and intents of this my last will and testament."

Here is a present gift in trust to carry out the provisions of the will. One of these provisions is: "I give, devise and bequeath all the rest, remainder and residue of my estate for the erection, creation, maintenance and endowment of a free public library to be called the John Crerar Library, and to be located in the city of Chicago, Illinois." If the gift is one to charity at all, it is *in presenti.* The language is susceptible of no other meaning. The donee is not, as is assumed, a corporation to be created in the future. The object of the testator's bounty is not the corporation to be created for the purpose of giving effect to the gift, but the public. His is "a gift to a general public use, which extends to the poor as well as the rich," and that is a gift to charity. In other words, as we shall hereafter see, the gift to charity is complete, without reference to any of the suggestions or directions of the testator as to how the bequest shall be carried into effect, and, therefore, the fact, that the time within which the corporation is to be organized is not limited, and it may not come into existence

within the period allowed for the vesting of future estates, in no way affects the validity of the gift. The corporation may never be created, and still the gift, being to a charitable use, it will be upheld. (See *Jones* v. *Habersham,* 107 U. S. 174.) In Gray on Perpetuities, sec. 607, it is said: "But if the court can see an intention to make an unconditional gift to charity (and the court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and, therefore, not within the scope of the rule against perpetuities."

We have given the argument of counsel, in support of their contention that the bequest of the residuum of the estate under this will is void under the rules of law against perpetuities, a patient consideration, and carefully examined the authorities cited in support thereof, and are unable to discover any satisfactory reason or sound principle of law upon which their contention can be sustained.

It was earnestly contended in the brief and argument filed in the Appellate Court, refiled here, that the bequest named in the fiftieth clause is void for uncertainty as to the subject matter of the gift, and because the executors and trustees are authorized, as is said, to expend a portion of the residuary estate for purposes "non-charitable."

These contentions are both based upon the theory that the 49th clause, directing the executors and trustees to set apart a fund to raise an income out of which to pay all costs, charges, etc., arising in the administration of the estate and executing the will, gives the executors and trustees the power to fix, arbitrarily, the amount of that fund, and in their own unlimited discretion say when it shall go to the "rest, remainder and residue" of the estate, and also that the fund to be so provided can be expended, by the trustees, for purposes other than the charity named in the fiftieth clause, and, therefore, for purposes "non-charitable."

If the 49th clause is susceptible of the construction thus placed upon it, it should doubtless be pronounced void, but we are unable to see why, even then, the fiftieth clause should fall with it.   The latter is, in and of itself, a complete residuary bequest of all the estate of the testator. If the directions set forth in the 49th clause should be stricken out entirely, the residuary bequest would be unaffected, except that the costs and expenses of administration,. and carrying out the trusts mentioned in the will, would be paid out of the principal of the residuum, instead of from the income of a portion of it.

But the construction placed upon the 49th clause can not, in our opinion, be maintained.   It is to be construed together with the fiftieth clause, and read as though it were a part of it, or, as said in the opinion of Judge Tuley, adopted by the Appellate Court, as though it had followed that clause instead of preceding it.   In either way, without changing the legal effect of the provisions of the will, the intention of the testator is made clear, that any fund set apart under the 49th clause should be regarded and treated as a part of the estate bequeathed by the fiftieth clause.

Neither are we able to concur in the view, that the two clauses taken together give arbitrary powers to the executors and trustees to fix the amount of the principal fund to be set apart under the 49th clause, or to say when it shall be paid over to the residuum.

They are authorized to set aside a *proper amount* to raise an income to pay certain charges and expenses, all of which are either fixed by law, or, by the terms of the will, must be reasonable.   A court of chancery could unquestionably restrain any attempt on the part of the executors and trustees to act arbitrarily or unreasonably in exercising the authority thus conferred upon them.   Story's Equity Jurisprudence, vol. 2, sec. 1191; *Happy et al.* v. *Morton et al.*, 33 Ill. 398.   That clause, as we understand it, gives the executors and trustees no greater *power* than they would have

had without it. It only authorizes them to exercise the power given them, by the law, in a particular way.

The testator having directed that the trustees named in his will should be paid "reasonable fees and compensation," such fees and compensation become a legal charge against his estate, and, together with the costs and charges of administration and carrying out the provisions of the will, would be payable out of the rest, remainder and residue of the estate, under the supervision and direction of a court of chancery, without the 49th clause, or any other specific directions to that effect. A court of chancery would, in the absence of any such provision, compel the payment thereof, at the same time protecting the estate against all unreasonable or illegal charges. It will do the same, if necessary, by way of enforcing the provisions of clause 49.

It is still more difficult to perceive upon what legal principle it can be said, that, under the direction of this clause, the executors are authorized to expend any part of the residuary estate for purposes "non-charitable," within the meaning of what was said in *Mills* v. *Newberry*, 112 Ill. 123, or in *Taylor* v. *Keep*, 2 Bradwell, 368, viz.: "if the language of the gift or devise leaves to the trustee a discretion to expend the fund for a purpose non-charitable, or for purposes partly charitable and partly non-charitable, it will not be upheld."

Will it be seriously contended, that, because the executors and trustees are authorized to pay the legal costs and charges against the estate out of the residuum, therefore they have a discretion to expend a part of the charitable gift for purposes non-charitable? If so, in every case where a testator directs his executors to pay all costs and expenses of administration, and of carrying into effect his will, and bequeathes the residuum of his estate to charity, the gift to charity would be void, whereas, if he gave no express directions as to such costs and charges, the gift would be valid, although the residuum of his estate would

be chargeable with such costs and expenses. It will be observed that this will, by a plan adopted by the testator, protects the whole of the principal of the residue of his estate from the payment of costs and expenses. Even any surplus of the income out of which costs, etc., are to be paid, is appropriated to charity. It is difficult to see how an intention could be more clearly expressed, that all the rest, remainder and residue of an estate should be expended for a charitable use, than is here shown.

The further contention that said bequest is void, because, as is said, the corporation provided for in the fiftieth clause can not be legally organized, is, we think, without force. As already said, the gift "for the erection, creation and maintenance and endowment of a free public library," is a good gift to charity, whether the corporation is organized or not. We entertain no doubt that the directions of the testator as to the manner of carrying out that bequest can be given practical effect under the laws of this State, but whether they can or not, the gift itself is, nevertheless, valid.

If anything is settled in this State touching the law of charitable bequests, it is established by the decisions of this court, that all that part of said fiftieth clause which provides the manner of putting the John Crerar Library into practical operation, may be held impossible of execution, and the bequest still sustained and carried into effect by a court of equity.

No good purpose would be served by extending this opinion in discussing the question, as to when the doctrine of *cy pres* can be properly applied in order to give effect to conveyances or bequests to charitable uses. It is sufficient, for the purposes of this decision, to know that in this State a court of chancery will consider charity as the substance and, if the mode pointed out in the conveyance or will for carrying it into effect fails, will provide another mode by which the charity may take effect. *Heuser et al.* v. *Harris Exr.*, 42 Ill. 434, and authorities cited, *Andrews* v. *Andrews*, 110 id. 223; *Hunt et al.* v. *Fowler*, 121 id. 276.

These decisions are also full to the point, that it is the fixed policy of the law to uphold charitable bequests, and that "courts incline strongly in favor of charitable gifts, and take special care to enforce them."

No greater wrong could be done the giver of this magnificient bequest than to defeat his clearly expressed wish, that the greater part of his estate, amply sufficient for the purpose, should be expended in the erection, creation, maintenance and endowment of a free public library, in a great city, to bear his name, because, forsooth, in an effort to direct the means of carrying out the purposes of that bequest, he may have misconceived the practicability of some of those means, or failed to prescribe, with exactness, when and how those means shall be put into operation.

Our conclusion is, that the residuary bequest in this will is a good and valid gift to a charitable use. It follows that, in our opinion, the decree of the Circuit Court, dismissing appellant's bill, was right, and that it was properly affirmed by the judgment of the Appellate Court.

*Judgment affirmed.*