## Emma Wadhams Green, Plaintiff in Error, v. Old People's Home of Chicago et al., Defendants in Error.

## Gen. No. 19,794.

1.    FORFEITURES, § 1*—*how regarded.*  Forfeitures are never favored by courts of equity, and gifts for charitable purposes are the special care of such courts.

2.    WILLS, § 493*—*when bequest to charitable corporation forfeited.*  Where a bequest was made to an Old People's Home to promote the objects and purposes for which such Home was organized, such bequest would not be forfeited under the terms of the will unless it was clearly shown that the Home had ceased or failed to carry out effectively the objects and purposes for which it was organized.

3.    TRUSTS, § 243*—*what is remedy to enforce trust.*  In the event of nonuser or misuser of a gift for charitable uses, the remedy is not the forfeiture of the property to the grantor or his heirs, unless the trust is coupled with a condition to that effect, but by a proceeding in equity to enforce the trust.

4.    WILLS, § 493*— *when equity will not forfeit bequest at instance of heir.*  A court of equity will not, at the instance of an heir, decree a forfeiture of a bequest to an Old People's Home for the construction of a suitable building, where there is no showing as to the reasonableness or unreasonableness of the time elapsed, or the adequacy of the fund for the purpose contemplated.

5.    WILLS, § 495*—*how property disposed of when gift has lapsed or is void.*  Where lapsed or void gifts of personal property fall into a general residuary bequest, instead of being an intestate estate descending to the heirs at law, such heirs have no right or interest in a gift which lapses.

6.    WILLS, § 343*—*when conditional limitation valid.*  Under a will making devises to several charitable corporations, a conditional limitation is valid and effective and not obnoxious to the rule against perpetuities, since the beneficiary is a charitable corporation.

7.    WILLS, § 346*—*when conditional limitation created.*  Where a will provided for a bequest to a charitable corporation, but stated that if such corporation failed to carry out the purposes for which it was organized the bequest should be treated as a lapsed legacy, there being a residuary bequest to another charitable corporation

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and a specific legatee, such will did not create a condition subsequent but a conditional limitation, the limitation over being in the nature of an executory devise.

8. WILLS, § 343*—*what is effect where limitation over is void.* Where a limitation over is void, the property is vested in the first taker as if the devise had been originally free from any limitation over.

Error to the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed December 22, 1914.

COBURN & BENTLEY, for plaintiff in error.

CHARLES R. WEBSTER, for defendants in error.

MR. JUSTICE SMITH delivered the opinion of the court.

This writ of error is prosecuted by the plaintiff in error to reverse a decree of the Circuit Court sustaining the demurrer of the Old People's Home of Chicago and its trustees to the bill of complaint and dismissing the bill for want of equity.

The plaintiff in error, complainant below, sought by her bill to have certain funds and securities, which, for the last twenty-five years, have been in the hands of the defendants, declared a trust fund in her favor, and an accounting, etc.

It appears from the bill that the complainant is the daughter and sole heir of Seth Wadhams, who departed this life February 6, 1888. The bill sets up that on June 29, 1886, Wadhams made his last will and testament, which was duly proved in open court and admitted to probate by the County Court of Du Page county, State of Illinois, where he lived at the time of his death, and a copy of the will is annexed to and made a part of the bill. Wadhams, at the time of his death, was possessed of an estate of about $1,000,000,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

which included certain real estate occupied by him as a homestead known as "White Birch," in Du Page county, Illinois, and by the terms of his will he ordered and directed his executors to sell "White Birch" and dispose of the proceeds as follows: One-half part thereof to the Board of Trustees of the Old People's Home of Chicago, Illinois, to have and to hold the same to them and their successors in office, in trust, to manage, invest and control the same, and the same from time to time to use and reinvest, and the annual income thereof to use and expend in defraying the current expenses of a certain charitable home consisting of a building to be known as the "Home for Old Men," to be erected as provided in the will and particularly in the thirty-second paragraph thereof. In that paragraph the testator gave and bequeathed to the Board of Trustees of the Old People's Home of Chicago, Illinois, the sum of $20,000, to have and to hold the same to them and their successors in office, in trust, however, to use and expend the same in the erection of a charitable building, the same to be used, managed and controlled by the said Board of Trustees as a "Home for Old Men of American Birth" only, separate and apart from said Old People's Home; and it is further provided in the thirty-fourth section of the will that in case the said Board of Trustees of the said Old People's Home, and the said Old People's Home, should at any time fail or cease to carry out effectively the objects and purposes for which they were organized, and to promote which the bequests were by the testator made and given, it was the will of said testator that the bequests made in the said will to the Old People's Home, and the terms thereof, should be held inoperative and void, and for that cause should become cancelled, revoked and annulled, and that the property, moneys and estate set aside to the said charitable use should be held and disposed of as a lapsed legacy, and should pass and become the property of the complainant.

It is alleged that the executors of the said testator, Wadhams, received one-half of the proceeds from the sale of the said homestead, the sum of $10,000, the income of which was to be applied to and for the maintenance of said building to be erected and to be known as a "Home for Old Men of American Birth;" and on or about July 24, 1890, under the provisions of the will, the executors delivered to the then acting trustees of the said Old People's Home of Chicago the said sum of $10,000 in trust, for the charitable uses and purposes expressed in the will.

It is further alleged in the bill that the executors, under and by virtue of the terms of the will, turned over and delivered to the said trustees of the Old People's Home of Chicago the sum of $20,000, under and by virtue of the thirty-second paragraph of the will, for the purpose of erecting a building to be used as a Home for Old Men of American Birth, separate and apart from the other building of the Old People's Home, and that said moneys were received by the said trustees on or about June 23, 1890.

The bill further represents that the Old People's Home of Chicago and the trustees thereof and their successors have never used the said bequests, or either of them, to carry out effectively the objects and purposes for which the bequests were made, but, on the contrary, did immediately place the funds with some financial institution, trust company or bank, and caused them to be invested and reinvested during the twenty-two years last past in various securities, and have never built out of the fund of $20,000 so bequeathed, the Home for Old Men of American Birth, separate and apart from the said Old People's Home, as provided in the will; nor have they used the proceeds of the said $10,000 for the charitable use expressed in the will, but still retain the same, so that the fund in the hands of the bank or financial institution, exclusive of fees paid to said trust company or

financial institution, on May 18, 1911, amounted to the sum of $71,900.

The bill further alleges that the Old People's Home of Chicago is a corporation organized under and by virtue of the laws of the State of Illinois, not for pecuniary profit, but for the charitable purpose of providing a home for old people.

The bill represents that the bequest has, by lapse of time in the failure to use the money for the purposes provided, and by reason of the statute against perpetuities, lapsed and become a trust fund for the complainant in the hands of the said Old People's Home of Chicago and its said trustees; that the complainant, as the sole heir of the testator, said Wadhams, on February 21, 1912, caused notice to be served upon the Old People's Home of Chicago and its officers and trustees to the effect that she is the sole heir of said Wadhams, deceased, and did thereby declare the bequest made by her father, the said Seth Wadhams, in his last will and testament, to have lapsed and to have become null and void, under and by virtue of the terms of his will, and that she demanded of the said Old People's Home of Chicago and its officers and trustees that they account to her for the said bequest, together with the interest earned thereon; yet they have failed and refused so to do, and deny that the bequest has lapsed.

The bill further represents that the Old People's Home of Chicago and the trustees thereof have secured from various sources, for the charitable purpose of providing a home for indigent old people, a large fund or sum of money exceeding $1,000,000, and have used the same exclusively to construct extensive buildings for the support of indigent old ladies, but have built no building or buildings or provided any support for old men of American birth, either with such buildings already built, or separate and apart from the Old People's Home building established by them for old ladies, nor have they provided any support for old

men of American birth, as provided in the bill, nor
have they used the bequests or legacies therein given
them in accordance with the intent of the testator,
whereby the complainant, as his heir, has the right to
and has declared the said gift terminated, lapsed and
cancelled.

The material clauses of the will of Seth Wadhams
set out in the bill are the following:

"Third.   I order and direct my executors to sell as
soon after my death as they may deem expedient my
homestead known as White Birch, and described as
Blocks Three (3), Four (4), Nine (9), and Ten (10),
in D. N. Burnham's Addition to Cottage Hill, in said
Du Page county, and the proceeds to be distributed as
follows, to-wit:

"One-half part thereof to the managers of the Chi-
cago Nursery and Half Orphan Asylum, to have and
to hold to them and their successors in office, in trust
however, to and for the following uses and purposes
namely, in trust, to hold, manage, invest and control
the same, and the same from time to time to reinvest,
and the annual income thereof to use and expend in
defraying the current expenses of said Asylum, and
the remaining one-half part of said proceeds to the
board of trustees of the Old People's Home of Chi-
cago, Illinois, to have and to hold the same to them
and their successors in office, in trust, to manage, in-
vest and control the same, and the same from time to
time to reinvest, and the annual income thereof to use
and expend in defraying the current expenses of The
Home for Old Men, to be erected as hereinafter pro-
vided further, I hereby direct that my said homestead,
known as White Birch, shall be sold to Mrs. Aurelia
R. King of Chicago, Illinois, for the sum of $20,000,
if she desires to purchase the same.   In case the said
Mrs. Aurelia R. King shall decline to purchase said
homestead, then the same may be sold to any child
or children of the said Mrs. Aurelia R. King, for the
said sum of $20,000."

The will then makes a large specific bequest to Fred-
erick E. Hammond, known as Frederick E. Wadhams,

and many bequests to various charities and individuals, and then follow the thirty-second, thirty-third and thirty-fourth paragraphs, to wit:

"Thirty-second. I give and bequeath to the Board of Trustees of the Old People's Home of Chicago, Illinois, the sum of $20,000, to have and to hold the same to them and their successors in office, in trust, however, to use and expend the same in the erection of a suitable building, the same to be used, managed and controlled by the said Board of Trustees as a Home for Old Men, of American Birth only, separate and apart from said Old People's Home.

"The construction and design of said building to be under the charge and supervision of the said Board of Trustees, and to be erected upon a lot adjacent to said Old People's Home or any other lot now or to be owned by said trustees.

"Thirty-third. All the rest, residue and remainder of my estate I give, devise and bequeath as follows, to-wit:

"One-half to the Chicago Relief and Aid Society of Chicago, Illinois, a corporation duly established by law to have and to hold to said corporation, and its assigns, forever, but in trust, however, to hold, manage, invest and control the same, and the same from time to time reinvest, and the income thereof to use and expend for the objects and purposes for which said society was established.

"And the remaining one-half to Frederick Eugene Hammond, now known as Frederick E. Wadhams, absolutely, forever.

"Thirty-fourth. In case any of the institutions or corporations which under and by virtue of this my last will shall receive any portion of my estate, shall at any time fail or cease to carry out effectively the objects and purposes for which they were respectively organized, and to promote which the bequests to them respectively are by me herein made and given, then it is my will, and I do hereby declare that the bequests made in this will to any such institution or corporation shall be held inoperative and void, and for that cause

be and become canceled, revoked and annulled, and the same shall be held and disposed of as a lapsed legacy.''

The theory of the bill is that by reason of lapse of time and failure to use the bequests for the purposes designated in the thirty-second paragraph of the will, that bequest was subject to forfeiture at the instance of complainant as the heir at law of the testator, and that as such heir at law she has declared the said gift terminated, lapsed and cancelled, and that the same now constitutes a trust fund for her in the hands of the Old People's Home under and by virtue of the provisions of the thirty-fourth paragraph of the will. And that the specific bequest made in the thirty-third paragraph has likewise failed and now constitutes a trust fund for complainant in the hands of the defendant Home.

It is to be noted that the complainant does not allege in her bill that the Old People's Home has failed or ceased to carry out effectively the objects and purposes for which it was organized and to promote which, that is to say, such objects and purposes, said bequests were made. On the contrary, the bill alleges that the Old People's Home has received and now holds, securely invested, the fund of $30,000 so bequeathed to it for the charitable uses and purposes specified, and that said fund has increased by judicious investment to the sum of $71,900; that said Old People's Home is a corporation organized under the laws of the State of Illinois, not for pecuniary profit, but for the charitable purpose of providing a home for old people, and that it has secured from various sources a sum of money exceeding $1,000,000, which it now holds and uses for its corporate purposes. The bill does not allege that the will provides (and the fact is the will does not so provide) that the bequest shall be forfeited in case of failure to erect a suitable building to be used as a Home for Old Men of American Birth only, as provided in the thirty-second paragraph of the will. The bill alleges and the

will provides,. that only in case the Old People's Home shall at any time fail or cease to carry out effectively the objects and purposes for which it was organized, that the bequests made in the will should be forfeited. It is clear, we think, from a study of the bill, that the only condition on which it can be claimed that the bequests in question are subject to forfeiture is not alleged to have occurred, but that the bill, on the contrary, shows affirmatively that such condition has not occurred.

Forfeitures are never favored by courts of equity, and gifts for charitable purposes are the special care of such courts. By the terms of the will the bequest in question was made to the Old People's Home, not merely to use and expend in the erection of a suitable building to be used as a Home for Old Men of American Birth only, but as indicated in paragraph thirty-four of the will to promote the objects and purposes for which said Old People's Home was organized. It follows, we think, that before any forfeiture of said bequest can be made, it must be clearly shown that the Old People's Home has failed or ceased to carry out effectively the objects and purposes for which it was organized.

It is also a well-settled rule that in the event of non-user or misuser of a gift for charitable uses, the remedy is not the forfeiture of the property to the grantor, or his heirs, unless the trust is coupled with a condition to that effect, but by a proceeding in equity to enforce the trust. 5 Am. & Eng. Encyc. of Law (2nd Ed.) 915; *Stuart v. City of Easton,* 74 Fed. 854; *In re Mercer Home,* 162 Pa. St. 232; *People v. Cogswell,* 113 Cal. 129; *Mills v. Davison,* 54 N. J. Eq. 659; *Green v. Blackwell* (N. J.) 35 Atl. 375; *Associate Alumni v. Theological Seminary,* 163 N. Y. 417; *Strong v. Doty,* 32 Wis. 381.

The law raises every intendment in favor of a charity against the grantor or those claiming under him. *McKissick v. Pickle,* 16 Pa. St. 140.

Furthermore, the bill does not even allege that a reasonable time for the construction of a suitable building to be used as a Home for Old Men of American Birth only has expired. Whether or not such reasonable time has expired is necessarily a question of fact, depending upon many circumstances and conditions, such as adequacy of the fund for the purpose contemplated, and the immediate demand or need therefor, which the testator may well be considered to have left to the discretion of the Trustees of the Old People's Home, and which, in any event, is a fact to be ascertained and determined by the court under proper allegations before it can be determined whether or not a good reason for forfeiture on that ground is shown. If it be conceded that the condition upon which the forfeiture sought by the bill might be declared was that the building contemplated must be erected within a reasonable time, it may very well be contended that in order to effectively carry out the purposes of such bequest, it was necessary to let the fund accumulate until it reached such an amount as would enable the Old People's Home to erect a suitable and adequate building and maintain the same out of the income from the balance of said fund; and, further, that it would be improvident to invest the entire sum in the erection of a building for the purpose contemplated, unless an adequate endowment was provided, from the income of which the building might be maintained. Certainly the testator's heir at law, in the absence of any showing whatever as to the reasonableness or unreasonableness of the time elapsed, or the adequacy of the fund available for the purpose contemplated, could not declare a valid forfeiture of the legacies, nor would a court of equity, in the absence of such a showing declare such forfeiture at the instance of the heir.

There is, in our opinion, a more fundamental objection to the bill. The complainant, as heir at law of the testator, has no right or interest in the fund in question.

By the terms of the will the testator's entire interest in the fund in controversy passed to the Old People's Home.

Assuming, as claimed by counsel for plaintiff in error, and we think the claim is sound, that the law of this State is, as stated in *Carper v. Crowl,* 149 Ill. 465, and *Hobbie v. Ogden,* 178 Ill. 357, that the principles applicable to the vesting of real estate apply generally in case of personal property, certainly where such personal property consists of the proceeds of sale of real estate, and, applying established principles to the construction of the will, the purpose and effect thereof, so far as the same relates to the matter in controversy, are plain, and it conclusively appears that all lapsed or void gifts of personal property fall into a general residuary bequest instead of being an intestate estate descending to the heirs at law, then plaintiff in error has not and cannot have any right or interest in the fund in question in any possible event. That such lapsed gifts of personal property fall into the general residuary bequest of the will is well settled. *Crerar v. Williams,* 145 Ill. 625; *Dorsey v. Dodson,* 203 Ill. 32; *Crawford v. Mound Grove Cemetery Ass'n,* 218 Ill. 399.

By the thirty-third paragraph of his will the testator gave, devised and bequeathed all the rest, residue and remainder of this estate, one-half to the Chicago Relief and Aid Society of Chicago, a charitable corporation, and the remaining half to Frederick Eugene Hammond, otherwise known as Frederick E. Wadhams. Paragraph thirty-four must, therefore, be construed as if there had been added thereto the words "and shall thereupon go to and become the property of said Chicago Relief and Aid Society of Chicago, and said Frederick E. Wadhams, in equal shares," or equivalent words. As to the one-half of the fund, therefore, which by such conditional limitation over in the event contemplated, that is, the failure of the Old People's Home to carry out effectively its corporate purposes,

would go to the Chicago Relief and Aid Society, there can be no possible doubt that such conditional limitation would be valid and effective and not obnoxious to the rule against perpetuities, for the simple reason that the Chicago Relief and Aid Society is a charitable corporation. *Jones v. Habersham,* 107 U. S. 174; *Hopkins v. Grimshaw,* 165 U. S. 342; *Andrews v. Andrews,* 110 Ill. 223; *Crerar v. Williams, supra.*

In *Jones v. Habersham, supra,* a testator had made devises to several charitable corporations for certain specified purposes, and then provided that if either one or more of said devisee corporations should attempt to sell, alienate or otherwise dispose of the property and estate so devised contrary to the terms and conditions set forth in his will, his executors or legal representatives should repossess and enter upon said property or estate as to which the condition might be so broken or violated, and, in that event, gave the property so entered upon and repossessed to Savannah Female Orphan Asylum, another charitable corporation. Commenting upon this provision of the will, the Court said (p. 185):

"There is nothing in this clause by which the heirs at law or next of kin can be benefited in any possible view. If the conditions against voluntary alienation and levy of execution are invalid, the previous devises stand good. If these conditions are valid, the devise over to the Savannah Female Orphan Asylum, an undoubted charity, will take effect; for, as the estate is no more perpetual in two successive charities than in one charity, and as the rules against perpetuities does not apply to charities, it follows that if a gift is made to one charity in the first instance, and then over to another charity upon the happening of a contingency, which may or may not take place within the limit of that rule, the limitation over to the second charity is good."

In full accord with the above is *Church in Brattle Square v. Grant,* 3 Gray (Mass.) 142. That case covers not only the validity of the limitation over to the

Chicago Relief and Aid Society, but also the question that plaintiff in error cannot be benefited in any possible view by the provisions in the thirty-fourth paragraph of the will. That question we now proceed to consider.

As to the remaining half of the fund, the only condition or limitation annexed thereto is found in paragraph thirty-four of the will. But for that provision of the will the Old People's Home would doubtless have taken an absolute estate or interest in the fund. Based upon paragraph thirty-four, and because Frederick E. Wadhams was also a specific legatee under the will, the contention is made on behalf of the complainant, plaintiff in error, that Wadham's share of such void or lapsed legacy would not fall into the residuary estate and be governed and controlled by paragraph thirty-three of the will, but would go to complainant, and *Crawford v. Mound Grove Cemetery Ass'n, supra,* is relied upon to support the contention. By the eleventh clause of the will before the court in that case, $25,000 and certain real estate was given to the Helen Huling Home to be held and managed as an endowment for the maintenance of the Home. No such institution was in existence when the will spoke, and the question was whether the lapsed gifts became intestate estate, or went into the residuum under the twelfth clause of the will; and under the authority of *Dorsey v. Dodson, supra,* it was held that the gifts became intestate estate. But no such question as that decided in *Crawford v. Mound Grove Cemetery Ass'n* and *Dorsey v. Dodson* arises in this case. When the bill was filed in this case Wadhams was living, and the question is not what would have become of the special legacy to Wadhams had he died prior to the death of the testator and such special legacy had lapsed. The reason for the exception to the general rule stated in *Dorsey v. Dodson* has no application in this case.

The provisions of paragraph thirty-four did not create simply an estate on condition subsequent, but

a conditional limitation, that is, a condition followed by a limitation over to a third person in case the condition be not fulfilled, or there be a breach of it. The limitation over is in the nature of an executory devise. As said in *Church in Brattle Square v. Grant, supra:*

"When an estate in fee is created on condition, the entire interest does not pass out of the grantor by the same instrument or conveyance. All that remains, after the gift or grant takes effect, continues in the grantor, and goes to his heirs. This is the right of entry, as we have already seen, which, from the nature of the grant, is reserved to the grantor and his heirs only, and which gives them the right to enter as of their old estate, upon the breach of the condition. This possibility of reverter, as it is termed, arises in the grantor, or devisor, immediately on the creation of the conditional estate. It is otherwise where the estate in fee is limited over to a third person in case of a breach of the condition. Then the entire estate, by the same instrument, passes out of the grantor or devisor. The first estate vests immediately, but the expectant interest does not take effect until the happening of the contingency upon which it was limited to arise. But both owe their existence to the same grant or gift; they are created *uno flatu;* and being an ultimate disposition of the entire fee, as well after as before the breach of the condition, there is nothing left in the grantor or devisor or his heirs. The right or possibility of reverter, which on the creation of an estate in fee on condition merely, would remain in him, is given over by the limitation which is to take effect on the breach of the condition.

"One material difference, therefore, between an estate in fee on condition and on a conditional limitation, is briefly this: that the former leaves in the grantor a vested right, which, by its very nature, is reserved to him, as a present existing interest, transmissible to his heirs: while the latter passes the whole interest of the grantor at once, and creates an estate to arise and vest in a third person, upon a contingency, at a future and uncertain period of time."

In the above case the question in dispute was as to the title to real estate devised by the testatrix to a church upon a condition substantially the same in its legal effect as the condition mentioned in paragraph thirty-four of testator's will, with the express provision that upon the breach of such condition the bequest was to be void and of no force, and the property devised was thereupon to revert to the estate of the testatrix and to go to her nephew, who was also the residuary devisee, and his heirs forever.

It will be seen from the above statement that the four corners of the will here under review correspond with those of the will under consideration in the above-cited case, so far as it relates to the question before us for decision. The cases cannot be differentiated. The court held that the heirs at law of the testatrix had no interest whatever in the property; that the limitation over to the residuary devisee was void for remoteness, but that the effect of the invalidity of the limitation over was to vest the first taker, the church, with an entire interest or absolute fee in the property, as if the devise had been originally free from any limitation over.

This rule as to the effect of a void limitation over is the settled law of this State. Kales on Future Interests, sec. 183; *Post v. Rohrbach,* 142 Ill. 600; *Howe v. Hodge,* 152 Ill. 252; *Nevitt v. Woodburn,* 190 Ill. 283; *Chapman v. Cheney,* 191 Ill. 574.

As heir at law of Seth Wadhams, the complainant, plaintiff in error has, therefore, no interest in the fund in question. The decree is affirmed.

*Affirmed.*