**Rebecca H. Quimby, v. Walter Reynolds Quimby et al. On Appeal of Illinois Manual Training School Farm, v. The Legal Representatives of Mary A. Hall, deceased, et al., Appellees.**

### Gen. No. 17,424.

1. CHARITIES—*test in determining whether will evidences a general charitable intent.* In construing a bequest, where a devisee has ceased to exist, to determine whether the will evidenced a general charitable intent in order to determine whether the doctrine of *cy pres* can be invoked, the test is, whether the bequest is to a cause or for a purpose, or to aid and further a plan or scheme of public benefit.

2. CHARITIES—*when doctrine of cy pres cannot be invoked.* Where at the time of the vesting of a bequest a devisee has ceased to carry on charitable work, in construing the bequest to determine whether it evidences a general charitable intent, the fact that the devisee was engaged in charitable work for needy boys and girls and that the gift was for a charitable purpose does not evidence a general charitable intent, and the doctrine of *cy pres* cannot be invoked.

3. CHARITIES—*gifts are favored.* Gifts to charity are especially favored in law, and courts will be keen-sighted to discover an intention to make a gift to charity.

Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed November 29, 1912.

THOMAS E. D. BRADLEY and ELMER A. ROAT, for appellant.

CHARLES LANE, for appellees.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Jane E. Reynolds by her will dated September 4, 1889, devised and bequeathed her entire estate to Benjamin F. Quimby, upon certain trusts therein mentioned, "giving to him as such trustee such power and authority over the property * * * as may be necessary to carry my intentions into effect in the execution of my will."

The controversy before us arises over the bequest of the remainder of her estate, which is as follows:

"I further direct my said executor to give and convey all the remainder of my estate, goods and chattels to my beloved grandson Walter Reynolds Quimby, whenever he may appear and make claim to or for the same. If, however, at the expiration of five years from the date of my said decease, my said grandson does not so appear and at the end of such period of five years it is not known that my said grandson is living, I hereby direct that all that may remain of the money and amounts due me which may be collected by my said executor or trustee, with the accumulated interest, shall be paid to the Chicago Waif's Mission and Training School."

The grandson, Walter Quimby, never appeared. He had disappeared in 1880, some nine years prior to the making of the will, and was never found. It is alleged in the answer filed by the heirs claiming the

fund that he is dead, that he died before the death of Jane E. Reynolds, and the decree entered by the chancellor so finds.

The Chicago Waif's Mission and Training School was a voluntary association conducting a Sunday School for neglected children in the city of Chicago, and afterwards in addition to religious services began looking after the temporal welfare of dependent boys. It was organized as a corporation not for profit on January 22, 1889, the objects, as stated in its articles of incorporation, being "to provide suitable homes for the homeless and the dependent and needy boys and girls in the State of Illinois, wherein they may be properly cared for while they are being educated and taught some useful trade or occupation, and aid them in various other ways."

Mrs. Reynolds, the testatrix, having died on November 17, 1894, the five years within which her grandson, Walter Quimby, could claim the bequest to him expired on November 17, 1899. At that time the Chicago Waif's Mission and Training School had wholly ceased to carry on the work for which it was organized, or any other work, having about a year prior to that time turned over to the Illinois Industrial Training School for Boys, at Glenwood, Illinois, all of its property and boys. The Illinois Industrial Training School for Boys afterwards changed its name to the Illinois Manual Training School Farm, and is the appellant here. On July 1, 1902, an order of cancellation of the charter of the Chicago Waif's Mission and Training School was entered in the office of the Secretary of State, and it has never been reinstated.

Benjamin F. Quimby, the trustee named in the will, having died July 17 1897, the Title Guaranty & Trust Company was appointed trustee to succeed him on May 4, 1898. The Chicago Title & Trust Company (which by consolidation had succeeded the Title Guaranty & Trust Company as trustee) on November 4, 1908, filed its petition in the chancery court represent-

ing that distribution could not be made to the Chicago Waif's Mission and Training School as it had ceased to carry on the charitable work for which it was organized, and set up the claim of the heirs and of others and asked for an order of court in the premises. The bill made as parties defendant the heirs of Walter Reynolds Quimby and "unknown owners". To this bill certain collateral heirs at law of the testatrix filed their answer, as did the Attorney General, who was made a defendant. The Illinois Manual Training School Farm filed its answer as one of the unknown owners made parties defendant to the petition, and claimed the fund under the equitable doctrine of *cy pres*, by reason of the similarity of the work carried on by it to that carried on by the Chicago Waif's Mission and Training School. This training school farm is a corporation not for pecuniary benefit. Its object is stated in its articles of incorporation thus: "To provide a home and proper training school for destitute and dependent boys who may be committed to its charge." Upon hearing, a decree was entered by the chancellor finding the facts as above set forth, and also determining the heirs at law and next of kin of Jane Reynolds, and further that inasmuch as the Chicago Waif's Mission and Training School ceased to carry on the charitable work for which it was organized on July 14, 1898, "and has not since said last mentioned date done or performed any of the work for which it was organized, and has discontinued the exercise of its corporate functions and abandoned its corporate franchises, it is not now entitled to said trust estate or any part thereof." The decree further found "that there is nothing in said will of Jane E. Reynolds, deceased, showing a general charitable intention, and showing that the said testatrix intended to devote said trust estate to charitable purposes in the event that the gift over to the Chicago Waif's Mission and Training School failed, and that

therefore the said trust estate ought not to be applied *cy pres* by the court to other charitable purposes." From this decree the Illinois Manual Training School Farm, hereinafter called appellant, has appealed to this court.

Counsel for appellant correctly say that: "The sole question presented is: Does the record make out a case for the application of the *cy pres* doctrine?" The usual definition of the equitable rule of *cy pres* has been stated thus: "When a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, the duty may be performed with as close approximation to that scheme as reasonably practicable." 12 Cyc. 1191. And in White v. Fisk, 22 Conn. 30, the *cy pres* doctrine is thus described: "It seems to be this, that if it can be seen that a charity was intended, by a testator, but the object specified cannot be accomplished, the funds may be applied to other charitable purposes, or that the chancellor may seize them as a sort of waif, and apply them as his, or the king's good conscience, shall direct. * * * In this way the chancellor substitutes himself in the donor's place, and really makes the will himself." If this broad statement of the rule comprehended all the elements involved, the application of it would be comparatively free from difficulty. Courts would determine only whether the organization named by will as the beneficiary was capable of taking, and if it were incapable what other organization nearest approached it in its purposes and work. In undertaking to carry out the intentions of persons making charitable bequests, courts early were met with the question of whether or not the testator had intended to aid a general class needing charitable assistance, or only the particular and specific organization named in the will. Almost without exception, therefore, the cases in which the application of the rule of *cy pres* is sought turn upon the conclusion of the court as to

whether or not the will evidenced a general charitable intent. This is the controlling inquiry before us. From an inspection of the clause of the will under consideration it is seen that the testatrix used no special words indicating an intention to benefit needy boys and girls generally; so that the critical question arises, can a general charitable intent to benefit a particular class of dependents be deduced from the sole fact that the organization named in the will was engaged in charitable work for that particular class of dependents? Or applying the question to the facts before us, can a general charitable intent to benefit needy boys and girls generally, be deduced from the sole fact that the Chicago Waif's Mission and Training School was engaged in charitable work for needy boys and girls? Many cases have been cited by counsel for both parties, but none exactly in point as touching this particular question.

The general rule stated in Pomeroy's Equity Jurisprudence, vol. 3, page 1964, is: "A limitation upon the generality of the doctrine seems to be settled by the recent decisions, that where the donor has not expressed his charitable intention generally, but only by providing for one specific particular object, and this object cannot be carried out, or the charity provided for ceases to exist before the gift takes effect, then the court will not execute the trust; it wholly fails." And in Underhill on Wills, vol. 2, page 1230, the statement is made: "If, however, the testator has not used language from which a general charitable intent may be implied, or if he has pointed out some particular institution or mode of application by which the charity is to be carried out, the court will not decree an execution *cy pres,* when, for any reason, the carrying into effect of the particular charitable intent of the testator becomes impracticable." It would serve no useful purpose to cite the many cases in which is discussed this limitation upon the general rule of *cy pres,* but from a study of these cases it will

be seen that the test seems to be this, that if the bequest is to a cause or for a purpose or to aid and further a plan or scheme of public benefit, there is evidence of a general charitable intent. This is illustrated in Richardson v. Mullery, 200 Mass. 247, a case which appellant's counsel urge as sustaining their contention. In this case the gift was "to the life-saving station to be·built and established", and it was held not to be a gift to any specific organization, but to which ever life-saving station might be engaged in the usual work of such a station in that locality. A similar case is Mason v. Bloomington Library Ass'n, 237 Ill. 442, where the bequest was to "an art studio or art gallery and studio, meaning thereby a suitable place wherein works of art will be collected, kept, preserved or exhibited for the advancement of education in art." Applying this test to the clause of the will before us, it will be seen at once that the gift is not to any cause, plan or scheme of charity, but to a specific and particular organization. We therefore must hold that the better reasoning favors the conclusion that no general charitable intent was indicated by the testatrix in her will. To hold otherwise would so extend the application of the rule of *cy pres* as to compel courts to administer charitable bequests in every case where the particular object named in the will is incapable of taking, unless apt words negativing such a course should be used in the will. The true rule is that the court will not act for the testator in this regard unless some words are used in the will showing an intention which only the chancery court can carry out.

Counsel for appellant urge that the gift to the Chicago Waif's Mission and Training School being for a charitable purpose, therefore the gift was a charitable gift or a gift to charity. This may be true in a certain sense, but it does not follow from this fact alone that it was a gift to charity generally.

We have reached the foregoing conclusion not forgetting that gifts to charity are especially favored in law, and that courts should be "keen-sighted" to discover an intention to make a gift to charity.

For the reasons above indicated the decree of the chancellor will be affirmed.

*Affirmed.*