(No. 31294.—

THE FIRST NATIONAL BANK OF CHICAGO, Trustee, *vs.* IVAN A. ELLIOTT, Attorney General, *et al.*, Appellees.— (MARIE PAUL GRANGER *et al.*, Appellants.)

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

C. M. GRANGER, V. G. BUTZ, DYER & DYER, SAMUEL H. SHAPIRO, R. N. NICHOLS, and EVA L. MINOR, all of Kankakee, for appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, FRANK W. CURRAN, State's Attorney, of Kankakee, KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, EUGENE J. LAMARRE and HARRY L. RICKARD, all of Chicago, (ROBERT J. BURDETT, A. ZOLA GROVES, WEYMOUTH KIRKLAND, HOWARD ELLIS, BARTLETT S. MARIMON, and WALTER T. KUHLMEY, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree of the circuit court of Kankakee County construed the last will and testament of Alfred Fortin, deceased, to the extent that it created a charitable trust. From this decree, the collateral heirs-at-law prosecute a direct appeal, a freehold being necessarily involved.

Alfred Fortin, a widower, a resident of Kankakee County, died testate on January 26, 1937. His heirs-at-law

are collateral kindred. Fortin's will was admitted to probate in the county court of Kankakee County. The will consists of three numbered sections. Of these, the first section directs payment of his debts, funeral expenses, costs of administration and succession and inheritance taxes. The second section consists of one paragraph, captioned, "Second," followed by thirteen lettered paragraphs (a) through (m). The numbered paragraph declares the "will and desire" of the testator that all of his net estate be ultimately dedicated to the founding, support and maintenance of an Orphans Home, as provided in the will, to be located in Kankakee County, where he was born and built the foundation of his estate. To the end that his will and desire be effectuated, Fortin gave, devised and bequeathed his entire estate to the First Union Trust and Savings Bank of Chicago in trust for the purpose previously expressed, subject to the provisions described in paragraphs (a) to (m), inclusive. The will directs the trustee to hold the entire estate as an accumulating trust for a period not to exceed twenty years from and after the date of the testator's death, so that it may grow and increase for the uses and purposes of the "charitable gift" provided for. Paragraphs (b) (c) (d) (e) and (f) contain directions relative to the management of the trust estate. Paragraph (g) provides that the Orphans Home, when established, shall be erected upon six lots owned by the testator in the village of Bradley, in Kankakee County, which Fortin had purchased for the site of the Orphans Home, or on some extension or annexation thereof. The building, it is stated, shall be in accordance with plans being prepared at the time the will was executed and shall contain at a prominent part in the front an inscription in stone, "Alfred Fortin Memorial Orphans Home." Paragraph (h) makes provision for the operation of the Orphans Home by and under the control of a corporation to be hereafter established under the laws of this State by citizens

of the United States who are members of the Roman Catholic Order of Sisterhood, known as the Gray Nuns, having its Mother House in Montreal, Canada. The next paragraph, (i), provides that, at any time after ten years from the date of Fortin's death, and before the end of the twentieth year, if the Gray Nuns shall first notify the trustee of their intention to undertake the "charitable work" described, and if they shall thereafter organize the corporation and domicile a sufficient number of the members of their Order in Kankakee County and notify the trustee of their readiness to begin the erection of a suitable building for the Orphans Home on the site selected, in accordance with a plan and specifications which the testator had caused to be prepared and "in which I desire the same to be followed strictly," then the trustee shall advance such funds to the corporation as shall be necessary for the erection of the building, provided, however, that its cost shall not exceed $125,000. Paragraph (i) concludes by providing that if the Gray Nuns accept the provisions of the will and if the corporation is organized and receives the trust property, the corporation shall pay over to St. Joseph's Catholic Parish of Bradley, Illinois, $5000 twenty years after the testator's death.

Paragraph (j) of the second section provides that all the remainder of the property in the hands of the trustee, after paying for the building, shall continue under the management and control of the trustee for the full period of twenty years from the date of the testator's death, the income to be paid to the corporation organized for the purpose of carrying on the "charitable trust." Paragraph (k) provides that, at the end of the twenty-year period, the trustee shall convey and transfer to the corporation all of the trust property and its accumulations, provided that the Gray Nuns and/or the Sisters of Charity, "les Soeurs de la Charite," shall have complied with all the requirements and conditions named in the will and provided that the

Orphans Home is then a going and operating concern for "charitable purposes" in perpetuity.

Paragraph (1) of the second section states that it is the testator's intention, and he so directs, that the Orphans Home, when established, shall be used for the care, boarding, lodging, maintenance and education of very young indigent orphan children, especially foundlings whose relatives are unable to properly care, board, lodge, maintain and educate them, and that he recommends to the Gray Nuns that they pursue a policy of finding good homes for the orphans with people who will take a parental care and interest in them, and that the children be legally adopted, if possible. The last paragraph (m) of the second section of the will provides that, in the event the Gray Nuns do not elect to execute and administer the "charitable trust" provided for in the will, or in the event that they do not qualify under its provisions, the testator has selected another religious Order of Catholic Sisterhood known as The Sisters of Charity, "les Soeurs de la Charite," which has several orphanages both in the Dominion of Canada and the United States, giving this Sisterhood all the right, power and authority to carry out the "charitable trust," and further carry out the provisions of the will instead of the Gray Nuns.

The short section denominated "Third" reads, "If the language used by me herein shall be ambiguous or susceptible of two or more constructions, it is my direction that said language be always construed in favor of and to give effect to the charitable trust by me herein created." Provision was made for the appointment of Eugene J. Lamarre, as executor, successor executors, a corporate trustee and a successor trustee, with the request that the executor be engaged as attorney by the trustee.

Immediately following the attestation clause appears an unwitnessed statement also revealing the intention of the testator. Fortin declared that, in creating the "charitable

trust herein," for the benefit of orphans or foundlings, he desired to state that, for many years, he had studied the situation of institutions carrying on this charitable work, not only in this country but, also, in Canada, and that he had inspected scores of institutions and found that, in most cases, they were situated in a congested part, or parts, of large cities and were generally crowded to their highest capacity. He stated that it was his utmost desire in creating the "charitable trust herein" to elaborate upon this finding of fact by him, namely, that such institutions should be built more in the open, away from larger cities, so that the inhabitants of the rural communities would have possibly a greater opportunity to take these children by consent of such institutions for rearing as their own, and that, in placing such unfortunates, it is to a greater advantage to them, morally and physically, that such orphans or foundlings be placed in homes in rural territories.

A codicil to the will named the First National Bank of Chicago as trustee in lieu of its predecessor corporation, the First Union Trust and Savings Bank of Chicago.

The estate was administered in Kankakee County and distribution made to the trustee. The assets consist of personal property valued at approximately $210,000 and real estate of a value between $125,000 and $150,000.

Ten years after the date of Fortin's death, namely, on July 2, 1947, the Sisters of Charity (Gray Nuns) advised the trustee, in writing, that, after giving the matter very serious consideration, they regretted to say that their Community was not in a position to accept the trust estate and, on September 8, 1947, in another letter to the trustee, stated their decision was to be taken as final; that their Community was incorporated in 1915, the corporate name being, "The Sisters of Charity of the General Hospital of Montreal, commonly called 'Grey Nuns,'" and that their board of directors, composed of five sisters, having full power over the Order, had voted to refuse the estate. The Sisters

of Charity of Providence, designated in Fortin's will as the alternate to the Gray Nuns, on October 23, 1947, decided not to accept the trust.

Thereafter, at the suggestion of His Eminence, Archbishop Samuel Cardinal Stritch of the Roman Catholic Diocese of Chicago, the Order of Dominican Sisters, operating the Sacred Heart Academy, and having its Mother House in Springfield, Illinois, organized the Cardinal Stritch Home, a not-for-profit corporation, for the following purposes: "The care, operation and ownership of a welfare institution for children with particular attention to orphan and dependent children." This order of Roman Catholic nuns is an order of the Roman Catholic Sisterhood having a continuous history of more than four hundred years. The Department of Welfare of this State made a determination, conformably to the applicable statute, (Ill. Rev. Stat. 1949, chap. 23, par. 299(i),) prior to issuance of the certificate to the corporation that the incorporators of petitioner are reputable and responsible persons, that the proposed work is needed, and that the incorporation of the child welfare agency is desirable and for the public good. A corporate purpose of the Order is the education of young people, the care of sick in hospitals, and the care of welfare institutions for children. The not-for-profit corporation was formed with the purpose in mind of furthering the purposes of Alfred Fortin set forth in his will.

On July 29, 1948, the plaintiff, the First National Bank of Chicago, as trustee, filed its complaint in the circuit court of Kankakee County, seeking a construction of the will and codicil of Alfred Fortin, deceased, and a determination whether there has been a failure of the designated charity to perform in the manner as originally planned by the testator, and, if so, whether there is a general charitable intent warranting the use of the *cy pres* doctrine or what substitute plan would be best suited to carry out the intent and purpose of the testator. The complaint also alleged

that certain heirs-at-law of Fortin contested his will; that thereafter, pursuant to a decree of the circuit court of Kankakee County, a settlement was made whereby the executor paid to the contesting heirs $25,000 in full of any and all claims they might otherwise have in and to the estate, and that each of the contestants signed and delivered to the executor a full and complete release of all interest in the estate. The Attorney General of the State, the State's Attorney of Kankakee County, the Gray Nuns, the Sisters of Charity, St. Joseph's Catholic Parish of Bradley, and the heirs-at-law of Alfred Fortin were made parties defendant.

The answer of St. Joseph's Catholic Parish averred the will reveals the testator's general intent that all of his net estate be dedicated to the founding, support and maintenance of an Orphans Home for dependent children to be located in Kankakee County; that the mode or manner of carrying out this general charitable intent has become impossible or impracticable, and that the Dominican Sisters are ready, willing and able to substitute for the Orders of Sisterhood named by the decedent. The answer asked that the court decree the Cardinal Stritch Home the proper substitute for the charities named in the will. The Attorney General answered that the trust estate should not fail but that, instead, the court should apply the *cy pres* doctrine and appoint some worthy charitable institution of the same general kind capable of and willing to carry into effect the provisions of the will. The State's Attorney's answer is to the same effect. Marie Paul Granger and forty-seven other collateral heirs admitted that there was an attempted contest of Alfred Fortin's will. They answered, further, that there is no ambiguity or problem of interpretation raised by the will, but that the "so-called 'charitable trust' " which Fortin attempted to create, having completely failed by reason of its inherent impracticability, the court should order the trustee to convey the property to the heirs-at-law

of the decedent. They specifically denied that the will authorized the *cy pres* application to charitable purposes of the estate or any portion thereof. These defendants, in their own behalf, and for all persons presently answering the description of heirs-at-law of Alfred Fortin, and all of the heirs and personal representatives of his heirs who have died since his death, also filed a counterclaim. By their counterclaim, a decree was sought adjudging that the plan of the will has wholly failed; that the entire remaining estate is the property of the heirs-at-law and should be made over to them by the trustee, according to their respective interests, and an accounting rendered.

The Cardinal Stritch Home, conformably to leave granted, filed an intervening petition in order that the trust provided in the will which, it is alleged, is a charitable trust, intended to be managed and operated by an Order of the Roman Catholic Sisterhood for the benefit of orphans and dependent children in Kankakee County, might not fail for want of a competent trustee. Petitioner alleged, further, that the plan for the establishment of the charitable trust provided in Fortin's will can be carried out in its general purposes, and that an institution of the following type would meet the purpose of the testator: (a) a capacity of fifty children, approximately twenty-five girls and twenty-five boys; (b) designed to handle children approximately three years of age and upwards, there being no provision for hospital facilities usually required for younger children; (c) a Catholic institution with no restriction as to religious qualifications of children cared for; (d) an original structure of three cottages, one for boys, one for girls, and one for administration; (e) use of parental contributions and local charitable backing, so far as available for maintenance, with the assurance of the Catholic Charities of the Archdiocese of Chicago that it will make up deficits accruing at the end of the year; (f) use of such personnel of the Dominican Order as may be necessary,

it being contemplated that six nuns will be able to manage the institution; (g) institutional policy to promote adoption of children, and (h) employment of a competent architect to plan the site and structure most suitable for carrying out the charitable intention of the testator. An order was sought, substituting the Cardinal Stritch Home, as beneficiary, in place and stead of the Order of Gray Nuns and "les Soeurs de la Charite" and authorizing it to procure the services of a competent architect to make a suitable plan for construction of buildings and obtain estimates of the cost of such buildings. Petitioner also requested the court to enter an order, upon final approval of the plan, finding that the trust has not failed, and that the heirs-at-law of Alfred Fortin have no further interest in the trust for the reason that their interest exists only in the event of the failure of the trust.

The trustee answered the intervening petition, alleging that it believes it was the intention of the testator that the charitable provisions of his will should not fail by reason of the failure of the Gray Nuns and/or Sisters of Charity to accept and administer the trust estate and that, if the court finds, in exercising its chancery powers it should, and does, invoke the *cy pres* doctrine, then, its belief is that the Cardinal Stritch Home is a worthy substitute for the two designated Orders of Catholic Sisterhood. Answering the counterclaim of the heirs-at-law, the trustee averred that it appeared from Fortin's will the testator intended and directed that his will should, in any event, be so construed as to give effect to a charitable trust. Various other answers were filed.

Introduced in evidence was a "Building Plan for Alfred C. Fortin," bearing the legend on a letterhead, "Alfred Fortin Memorial Building, Plan to be kept until needed. Nov. 24, 1932." An architect's drawing was captioned, "Alfred Fortin Memorial Infant Asylum. To be erected at Bradley, Illinois." The plans contained a drawing of a

four-story brick building with basement, 45 feet high and 100 feet wide. A building of fireproof construction of these dimensions, at the time of the trial, it was agreed, would cost in excess of $300,000. Two buildings of fireproof construction, each capable of housing twenty-five orphans or under-privileged children, it was further stipulated, can be built for an aggregate cost of $125,000 under today's conditions.

The members of a committee appointed by the chancellor, consisting of the pastor of St. Joseph's Catholic Parish of Bradley, the president of the school board and county board of Kankakee County, a former State's Attorney for eight years, and the county judge, testified that they were unanimously of the opinion there was a need for an institution such as contemplated by the will; that, as of January 12, 1949, there were forty-six dependent children in Kankakee County, twelve of whom were orphans, and that the Cardinal Stritch Home would serve the purpose of Fortin's will.

The decree adjudged that the beneficiaries of Fortin's will are, with the exception of St. Joseph's Catholic Parish of Bradley, the orphans and foundlings in Kankakee County; that the trust established for them is a valid charitable trust in perpetuity; that the will evidenced a general charitable intent, requiring a *cy pres* construction because of the declination of the two Orders of Sisterhood to assume the undertaking imposed upon them; that all the provisions of the will relating to the memorial to the testator, the type of building, its location, its cost, and the organization provided to bring into being the corporation to be formed, are merely incidental to the over-all general charitable intent; that the Cardinal Stritch Home fulfills the requirements of the testator, as expressed in his will for the organization of a corporation to undertake the construction and operation of the Orphans Home, and that the proposal of the Order of Dominican Sisters conforms as nearly as

possible to the testator's expressed wishes for the formation of a corporation to carry into effect his general charitable intent of providing a home for orphans and foundlings in Kankakee County. Accordingly, the Cardinal Stritch Home was substituted in lieu of a corporation to be formed by the Gray Nuns or Sisters of Charity, "les Soeurs de la Charite," and it was authorized and directed to proceed with its building plans and other work required to be done to carry into effect the erection and maintenance of the Orphans Home, as described in its plan set forth in the intervening petition. The decree ordered that the Orphans Home, when completed, be known as the "Alfred Fortin Memorial Home," the name to be memorialized in an appropriate and prominent place on the grounds, structure or gateway of the Home. The bequest to St. Joseph's Catholic Parish of Bradley was ordered paid in due course. The court found and adjudged, further, that the heirs-at-law of Alfred Fortin have no interest in the subject matter of the litigation, and dismissed for the want of equity all of their pleadings seeking relief. This appeal followed.

The controlling question presented by the pleadings in the circuit court and argued upon this appeal is whether the will of Alfred Fortin, deceased, manifests a general charitable intent to benefit (1) orphans and foundlings or, instead, (2) the specific Catholic Sisterhoods named in his will or the corporation to be formed, as directed. If the will manifests a general charitable intent, the factual situation recounted calls for the application of the *cy pres* doctrine. If, instead, the testator expressed a limited or specific charitable intent, the challenged decree cannot stand.

Applicable rules are firmly established. A gift for the erection and maintenance of a home for orphans and foundlings is, admittedly, a charitable gift. (*Skinner* v. *Northern Trust Co.* 288 Ill. 229; *Crerar* v. *Williams,* 145 Ill. 625; *Heuser* v. *Harris,* 42 Ill. 425.) Equity considers the general charitable purpose of a testator or donor as the

substance of the devise or gift, the mode pointed out in the will or conveyance for effectuating this purpose being a mere incident of the gift. (*Village of Hinsdale* v. *Chicago City Missionary Society,* 375 Ill. 220; *Bruce* v. *Maxwell,* 311 Ill. 479; *Crerar* v. *Williams,* 145 Ill. 625; *Heuser* v. *Harris,* 42 Ill. 425.) Where literal execution of the charity is impossible, impracticable, or inexpedient, the general charitable purpose to devote the property to charitable purposes being manifest, the trust will not be permitted to fail but the court will execute it *cy pres.* (*Mason* v. *Bloomington Library Ass'n,* 237 Ill. 442; *Ingraham* v. *Ingraham,* 169 Ill. 432; *Crerar* v. *Williams,* 145 Ill. 625; 2 Bogert on Trusts and Trustees, sec. 438.) The Restatement of the Law of Trusts (vol. 2, sec. 399,) defines *cy pres,* as follows: "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." It is not necessary that the mode or manner prescribed be impossible of execution, the *cy pres* rule being available if use in the designated manner is no longer feasible. (*Board of Education* v. *City of Rockford,* 372 Ill. 442; *French* v. *Calkins,* 252 Ill. 243; *Kemmerer* v. *Kemmerer,* 233 Ill. 327; *Crerar* v. *Williams,* 145 Ill. 625; *Stead* v. *American Security & Trust Co.* 173 Fed. 2d 650.) In *Village of Hinsdale* v. *Chicago City Missionary Society,* 375 Ill. 220, we observed that the fact a donor directs a use of funds in connection with a specific institution, or for the construction of a new building, will not prevent an application of the funds in an association different from the one named, (*Mason* v. *Bloomington Library Ass'n,* 237 Ill. 442,) and, further, that when the direction is to erect

a building upon a particular tract of land, equity does not always deem the location of cardinal importance. *Board of Education* v. *City of Rockford*, 372 Ill. 442, is to the same effect. Similarly, a requirement in the instrument creating a trust that the charity be perpetuated as a memorial to the name of the testator or donor will be regarded as a part of the scheme of administration rather than as the inducement for the gift, bequest or devise. Where, as here, the name specified can be perpetuated, although in a different manner, by the means of execution available, an objection to the proposed change is without force. *Village of Hinsdale* v. *Chicago City Missionary Society*, 375 Ill. 220; *Bruce* v. *Maxwell*, 311 Ill. 479.

Recourse to the will of Alfred Fortin impels the conclusion that the intended beneficiaries of the trust are orphans and foundlings and, conversely, that it does not exhibit the narrow intent of benefiting specifically the Gray Nuns, the Sisters of Charity, or a corporation to be formed by either of these Orders of Catholic Sisterhood. The provisions of the will proclaim the testator's general charitable intent. The second section commences, "It is my will and desire that all of my net estate, * * * be ultimately dedicated to the founding, support and maintenance of the Orphans Home, as herein provided." The same section, paragraph (1), states the testator's intention and direction that the Orphans Home, when established, shall be used for the care, boarding, lodging, maintenance and education of very young, indigent orphan children, especially foundlings, whose relatives are unable to properly care, board, lodge, maintain and educate them. In the paragraph following the attestation clause, the testator refers again to the creation of the charitable trust for the benefit of orphans or foundlings, mentions that he had long studied the situation of institutions carrying on this charitable activity, both in this country and in Canada, and "It is my utmost desire in creating the charitable trust herein to

elaborate upon this finding of fact by me that such institutions should be built more in the open." These and other provisions confirm our conclusion that the overriding intent of Fortin's will was a general charitable intent to benefit orphans and foundlings and that, on the contrary, he was not creating a trust for the benefit of either the Gray Nuns or the Sisters of Charity, "les Soeurs de la Charite." They were named as Orders to accomplish his general intent. The will contains many detailed provisions relative to the method of effectuating the general charitable intent of the testator but it is the general charitable intent which is controlling and not the mode or manner of executing it.

It will be observed that the testator made no bequest or devise to his heirs-at-law, or any other beneficiaries, in the event the two named sisterhoods declined to accept the obligation which the testator sought to impose upon them. The will exhibits exceedingly careful draftsmanship and the fact that this contingency was not provided for strengthens the conclusion that the will expresses a general charitable intent, as opposed to a specific, or particular, charitable intent. Professor Bogert, in his work on Trusts and Trustees, vol. 2, sec. 436, says, "If the settlor himself has given two or more alternative methods of accomplishing his charitable intent, there is some ground for supposing that his desires are of a general charitable nature and that he would be willing to have the court substitute other means if those named by him proved ineffective."

Section "Third" of the will declares that if the language employed is ambiguous or susceptible of two or more constructions, the language shall always be construed in favor of, and to give effect to, the charitable trust created. Assuredly, this provision manifests the controlling intention of the testator, namely, to provide funds for the creation of a trust for the benefit of orphans and foundlings. This section indicates that the testator may have anticipated the refusal of both sisterhoods designated by him to accept

the trust created or their inability to carry out the trust in the manner described. By naming a successor to the Gray Nuns, the will discloses a realization by the testator that, for reasons sufficient to themselves, they might refuse to serve. The section caption "Third" further reflects a realization that the Sisters of Charity might likewise refuse and that, in the event of the refusal by both of the sisterhoods to act, the charitable trust was, nevertheless, to be carried into effect.

Referring to the Gray Nuns and the Sisters of Charity whom he had selected to effectuate his charitable bequest and devise, the testator refers to "the charitable trust by me herein created." Similar expressions recur, and the will does not show special concern for either the Gray Nuns or the Sisters of Charity. In short, intent to the have the Gray Nuns and Sisters of Charity, to the exclusion of all other orders of Catholic Sisterhood, carry out the provisions of his will is lacking. Any remaining doubt that his principal desire was to create a memorial to himself in the form of a building, or otherwise, or that his overriding intent was to provide for the named beneficiaries or a non-existent corporation, is dispelled by the opening sentence of the paragraph following the attestation clause, "In creating the charitable trust herein for the benefit of orphans and foundlings, I desire to state * * *."

*Crerar* v. *Williams,* 145 Ill. 625, although not parallel, is analogous. John Crerar, as did Alfred Fortin, expressed the reasons for the creation of a charitable trust in clear and unmistakable language. Crerar's will directed his executors and trustees to cause an act of incorporation to be procured to carry out the purposes of his bequest of funds for the erection, creation, maintenance and endowment of a free public library, to be called the John Crerar Library. This court said, "The donee is not, as is assumed, a corporation to be created in the future. The object of the testator's bounty is not the corporation to be created for

the purpose of giving effect to the gift, but the public. His is 'a gift to a general public use, which extends to the poor as well as the rich,' and that is a gift to charity. * * * The corporation may never be created, and still the gift, being to a charitable use, it will be upheld. * * * The further contention that said bequest is void, because, as is said, the corporation provided for * * * cannot be legally organized is, we think, without force. * * * We entertain no doubt that the directions of the testator as to the manner of carrying out that bequest can be given practical effect under the laws of this State, but whether they can or not, the gift itself is, nevertheless, valid. If anything is settled in this State touching the law of charitable bequests, it is established by the decisions of this court, that all that part of said fiftieth clause which provides the manner of putting the John Crerar Library into practical operation, may be held impossible of execution, and the bequest still sustained and carried into effect by a court of equity."

Fortin's heirs-at-law place reliance upon *Quimby* v. *Quimby*, 175 Ill. App. 367, *Chicago Daily News Fresh Air Fund* v. *Kerner*, 305 Ill. App. 237, and *Volunteers of America* v. *Peirce*, 267 Ill. 406, holding that where gifts and devises are made to a specific entity, a particular charitable organization, and the entity named renounces or is incapable of taking, the gifts fail and revert to the donors or their representatives. In the *Quimby case*, the Appellate Court noted that the testatix did not employ any special words reflecting an intention to benefit needy boys and girls generally but that, instead, her bequest was to a specific and particular organization, Chicago Waif's Mission and Training School. Accordingly, it answered in the negative the controlling question, "can a charitable intent to benefit a particular class of dependents be deduced from the sole fact that the organization named in the will was engaged in charitable work for that particular class of dependents?"

In *Chicago Daily News Fresh Air Fund* v. *Kerner,* 305 Ill. App. 237, a testator bequeathed part of his residuary estate to the Chicago Daily News Fresh Air Fund, a charitable corporation. The named beneficiary renounced the bequest. In deciding that the fund renounced passed to the testator's heirs rather than to a similar charity under the doctrine of *cy pres,* the court said, "We conclude that Mr. Fiske bequeathed a part of the residue in question to a specific charity by name, thus evidencing an intent to benefit this specific charity and not a general charitable intent." In *Volunteers of America* v. *Peirce,* 267 Ill. 406, the will provided that one sixth of the testatrix's residuary estate go to the Buchanan Anti-Saloon League of Buchanan, Michigan. At the time of the death of the testatrix, there was not in existence any such organization or society as the named beneficiary capable of taking the attempted bequest, and the gift failed and descended as intestate property. In each of the three cases relied upon, and cases of like import, there was a gift to a particular beneficiary or named taker, in contradistinction to a gift to aid a general class needing charitable assistance.

To the argument that a building of the character described in the will could not be constructed in 1947 for $125,000, it is sufficient to observe that insufficiency of funds does not result in the failure of a charitable trust but, instead, affords a good reason for the application of the *cy pres* rule. (*Bruce* v. *Maxwell,* 311 Ill. 479.) Again, impossibility, impracticability, or nonfeasibility of the mode of carrying into effect the testator's general charitable intent does not defeat a charitable gift. (*Eaton* v. *Woman's Home Missionary Society,* 264 Ill. 88; *Kemmerer* v. *Kemmerer,* 233 Ill. 327.) In the case last cited, considering the question of a site, this court observed: "In any event, the site is not very material. The charity or charitable use impressed upon the estate is the important thing and the trust should be so administered as to carry out, as nearly as

possible, the intention of the testator as expressed in his last will and testament as admitted to probate."

The collateral heirs complain that, in any event, Fortin did not exhibit a general charitable intent of providing a home for orphans and foundlings in Kankakee County but, instead, to provide for orphans and foundlings generally. Application of the *cy pres* doctrine, once its application has been called for, is of no concern to the heirs. The duty then devolves upon the chancellor to determine what plan and method should be used to effectuate the testator's gen-, eral charitable intent. Others may suggest ways and means, but such suggestions are persuasive rather than controlling.

We are of the opinion that the chancellor correctly decided that Alfred Fortin's will manifested a general charitable intent to benefit an indefinite number of persons and, in particular, orphans and foundlings, rather than disclosing an intent to benefit solely a specific and particular organization whose incorporation has become impossible because of the renunciation of the Gray Nuns and the Sisters of Charity, and, further, that the Cardinal Stritch Home is a proper substitute under the doctrine of *cy pres* to achieve the paramount objective of the testator. To hold otherwise would frustrate the beneficent purposes so clearly reflected in the will of the testator and impute to him an extremely narrow and limited intent which the plain provisions of his will abundantly refute.

We are not unmindful, however, that, in administering charitable trusts, equity, in exercising its general jurisdiction, may prevent a trust from failing where there is no trustee, or where the trustee appointed resigns, or is unable to act, and, even where not named, one may be designated by the court. (2 Perry on Trusts and Trustees, 6th ed., sec. 722.) Likewise, where the funds devoted to a charitable purpose are insufficient, or become insufficient, the general practice is to petition the court for directions and, upon a hearing, the activities of the charity can be expanded or

diminished, or entirely suspended. It is usually where the charity has entirely failed that the extraordinary power of *cy pres* is used to designate another like charity to be aided or supported by the fund. Here, had the parties so desired, most of the relief could have been obtained by exercise of the court's inherent equity powers, although, since there is a change in location and size of the institution, a decree based upon the doctrine of *cy pres* is proper. We are, however, calling attention to the general powers of equity over charitable trusts, and to the fact that *cy pres* is regarded as an extraordinary application and not to be used on every occasion where administration becomes difficult. 2 Perry on Trusts, sec. 722.

The decree of the circuit court of Kankakee County is right, and it is affirmed.

*Decree affirmed.*