(No. 32928.— )

COMMUNITY UNIT SCHOOL DISTRICT NO. 4 *et al.*, Appellees, *vs.* OMA BOOTH *et al.*, Appellants.

*Opinion filed December 7, 1953.*

DeWITT & WOODRUFF, and JAY B. STRINGER, both of Mt. Vernon, and FRED J. RICE, of Washington, D.C., for appellants.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellee LATHAM CASTLE, Attorney General; and CONGER & ELLIOT, of Carmi, for other appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Wabash County construing certain trust provisions of the will of Walter S. Booth, deceased, and directing that the trustee turn over the remainder of certain assets of a trust fund to the board of education of Community Unit School District No. 4 in White and Hamilton Counties. Appellants here are the heirs of Walter S. Booth who claimed that the trust had failed and that they were entitled to the *corpus.* Appellees are the community unit school district, the members of the board of education of that district, the township school treasurer, and the Attorney General of the State of Illinois, who filed an answer and cross petition after being given leave to intervene.

By his will, dated January 4, 1933, testator, Walter S. Booth, after making certain specific bequests in the first six clauses, gave the residue in trust, the income from the

residue to be distributed to his sister, Stella Booth Krug, for her life and on her death the income in equal parts to be distributed to his half-sisters, Ruth A. Wilson and Mamie S. Darnell, the survivor to receive the entire income for her life with provisions for the use of principal for the care of the life beneficiaries in case the income did not meet their needs. The trust provisions for the benefit of the sister and half-sisters are found in the seventh, eighth, ninth and tenth clauses of the will. The eleventh and twelfth clauses are as follows:

"Eleventh. When the bequests mentioned in the above paragraphs Seven (7), Eight (8), Nine (9) and Ten (10) shall have terminated through the death of my said sister, Stella (Booth) Krug, and my said half-sisters, Ruth A. Wilson and Mamie S. Darnell, it is my will that the residue of my estate be given to the Board of Education of the Public Schools of the Village of Enfield, White County, Illinois, known as District Number Thirteen (13) for the erection and equipment of a building in said Village of Enfield, for the use of said public schools; provided, however, that the said Board of Education shall contribute an equal amount toward such building and equipment. The said Board of Education must meet the above conditions in a reasonable length of time.

"Twelfth: When all the terms of the above paragraphs shall have been met, the residue of my estate shall be used for the improvement and upkeep of the Public Schools of the Village of Enfield, White County, Illinois, known as District Number Thirteen (13)."

The testator died on August 12, 1933, and his will was probated in the county court of Wabash County on October 23, 1933. The two trustees named in the will duly qualified, and upon the death of one of those named, the trust was administered by the survivor. Stella Booth Krug died on February 10, 1950; Ruth A. Wilson died on December 23, 1951, and Mamie S. Darnell, the last of the life beneficiaries, died on February 24, 1952. The dispute here has arisen because, on July 1, 1949, School District No. 13 ceased to exist, the territory formerly comprising that district having become a part of a larger district, Community Unit District No. 4.

The proceeding in the circuit court was commenced by T. H. Daly, successor trustee under the trust created by the will. His petition, filed on May 22, 1952, recited that the beneficiaries who were to receive the income for life had died; that he had on hand personal assets in excess of $183,300 and real estate worth about $20,000 and sought instructions from the court as to his duties in relation to funds on hand. Defendants to the petition were the heirs of Walter S. Booth, deceased, the seven persons who constituted the board of education of School District No. 13 at the time of its dissolution in 1949, Community Unit District No. 4, its board of education and the township school treasurer. The seven persons who had constituted the board of education of School District No. 13 filed a disclaimer, alleging that the district went out of corporate existence on July 1, 1949; that upon its dissolution all the powers, rights and duties of its board of education ceased and by operation of law became vested in the board of education of Community Unit District No. 4; that they were but individuals with no interest in the matters mentioned in the petition. The disclaimer was allowed and the suit dismissed as to them. Appellant heirs answered the petition, admitting its allegations and praying that they be given the *corpus* of the trust. Appellees filed an answer admitting the allegations of the petition and also filed a counterclaim which alleged that School District No. 13 was dissolved by operation of law because of its inclusion in the territory of Unit District No. 4; that all authority, powers and duties were now vested in the latter district and its board of education; that the duties in regard to the grade school at Enfield have not changed; that the new district has made Enfield an attendance center; that the grade-school building at Enfield is being used by pupils from the same territory; that grade-school facilities have not been mixed with high-school facilities; that the unit district is in a position to carry out the trust in the manner

indicated in the will and is the only entity capable of so doing. The counterclaim further alleges that the board of the unit district has determined that a new building is necessary for Enfield grade school; that it desires to use the remainder for that purpose; that it can meet the condition named in the will and that, as the successor district, it is vested with title to the fund. It requests the trust fund either as of right as the successor district or *cy pres*. The trustee answered the counterclaim, stating that the controversy was between other parties; that he stood neutral and awaited the decision of the court. The Booth heirs by their answer denied that the Unit District succeeded to the right of District No. 13, claimed the *corpus* for themselves and asked that the counterclaim be dismissed.

The cause was tried upon the original petition, the answers thereto, the counterclaim and the answers to the counterclaim. The court, by its decree, applying the *cy pres* doctrine, granted the personal property in the trust for the purposes mentioned in the eleventh clause, *i.e.,* to erect a grade-school building in the village of Enfield, upon compliance with the conditions for matching the amount as set forth in that clause. The decree further provides that the real estate be given to the unit district for the upkeep of the grade-school building as provided in the twelfth clause. The chancellor found and decreed that the heirs had no interest in the trust.

The material facts are not in dispute. Walter S. Booth had been a school man for most of his life. He had taught in the grade schools in Enfield, Carmi and Mt. Carmel, serving as superintendent of the city schools in Mt. Carmel for a number of years. At the time of his death he held the office of assistant to the Superintendent of Public Instruction at Springfield. When Booth executed his will and when he died School District No. 13 was a grade-school district with territory embracing the village of Enfield and a small area surrounding. The school building was an

ancient brick structure, since condemned, though still in use. It is conceded that a new grade-school building is badly needed. On October 30, 1948, a petition was filed for the creation of Community Unit District No. 4. The proposed territory of this district included about seventy sections of land in White County and twenty-two sections of land in Hamilton County. It included the territory of District No. 13 which consisted of only a little over a section of land. The municipalities affected were Enfield and Springerton, the former lying in the south part of the proposed district and the latter five miles to the north. An election upon the proposition to establish the new district was held and the proposition was carried. Thereafter a board of education for the new district was elected and qualified. The change of supervision became effective on July 1, 1949.

Since Community Unit District No. 4 was established, it has operated grade schools at Enfield and Springerton and a high school at Enfield. This high school is conducted in a building on the east side of town, separate and apart from the grade-school building. The grade school is conducted in the same building which stood at the time testator made his will. Of the 250 students now attending the grade school at Enfield about 150 are from the village itself. Mindful of the provisions of the Booth will, the board of Unit District No. 4 adopted a resolution stating that they considered themselves beneficiaries of the trust fund and were ready, able and willing to meet the conditions set forth in the eleventh clause of the will. An election was called upon the proposition to build a new grade school on the site of the old building, and it carried by a large majority. A bond issue referendum for the issuance of $345,000 in bonds, of which $200,000 was for the building at Enfield, was submitted to the voters and carried. The bonds have been sold and the money is in the hands of the township school treasurer. An architect has been em-

ployed, and his preliminary report indicates that a modern building, properly equipped to meet the needs of the attendance unit at Enfield would cost a minimum of $350,000. The ability of Unit District No. 4 to carry out the conditions of the trust is not questioned.

Before considering the specific questions raised upon this appeal it might be well to refer to a prior decision of this court construing the trust provisions of the same will. Three years after the death of the testator his heirs who were not remembered in his will filed suit in the circuit court of Wabash County seeking to have both the private and charitable trusts declared invalid. The principal grounds on which the trust provisions were then attacked were: (1) that the trust provisions of the seventh through the twelfth clauses of the will were invalid and void for uncertainty of subject matter; (2) that the provisions were invalid as creating a mixed private and charitable trust; (3) that there was a discrepancy between clauses eleven and twelve, each purporting to dispose of the entire residue; (4) that the seventh through the twelfth clauses of the will violated the rule against perpetuities, and (5) that the trust provisions violated the law against accumulations of income. The trial court decided all contentions against the contesting parties and upon appeal this court affirmed that decree. *Booth* v. *Krug,* 368 Ill. 487.

The principal contentions involved in this appeal are: (1) that the trust provisions cannot be fulfilled because District No. 13 named in the will is no longer in existence and therefore the trust must fail, and (2) that the trust provisions are void under the rule against perpetuities. The reasoning under the second objection is that the condition imposed by the eleventh clause of the will is a condition precedent, making the gift contingent; that since the condition would not necessarily be met within 21 years and 9 months after the death of the last life beneficiary, the gift does not vest within the time prescribed by the rule. A

logical development of this opinion dictates that we consider the second objection at the outset.

In the earlier case above referred to the trial court found that the condition mentioned in the eleventh clause was a condition precedent; that such condition should be complied with within a reasonable time after the death of the testator, but that under the circumstances provided for in the will such reasonable time should not be held to have elapsed until the ending of the estates for life makes the fund available, and sufficient time thereafter for the offer, on the part of the trustees, determination of the extent of the condition, and a reasonable opportunity on the part of the school district to gather its resources to meet such condition. The court further found that the private portion of the trust ceased and determined at the end of lives in being and that the charitable portion was not affected by the rule against perpetuities. While our former opinion affirmed the decision of the trial court in all respects, including its interpretation of the condition imposed in clause eleven, we did not discuss specifically its ruling on the objection under the rule against perpetuities but discussed only the contention that the trust violated the rule against accumulation of income. We deem it advisable, therefore, to deal specifically with that objection here since counsel have again advanced that argument.

It should be observed at the outset that the entire argument of counsel for appellants on this point is based upon the proposition that the gift provided for in clauses eleven and twelve of the will is contingent and not vested. Indeed, there could be no question otherwise, because the rule against perpetuities applies only to contingent future interests and not to vested interests. The rule is applicable only to the beginning of the interest and is not involved in the postponement of its enjoyment. (*Harrison* v. *Kamp*, 395 Ill. 11.) It is conceded that the intended gift is charitable in nature but counsel argue that though the Stat-

ute of Elizabeth in regard to charitable uses (43 Eliz. 4) is in force in this State, and though, because of its operation, that part of the rule against perpetuities which prohibits restraints on alienation does not apply to charitable trusts, that part of the rule which deals with the vesting of an estate does apply to charities; that gifts to charity, before they become vested, are subject to the rule against perpetuities. That this may be questioned as a general proposition is indicated by the language found in some of the decisions of this court. Thus, in *Crerar* v. *Williams,* 145 Ill. 625, where the contention was made that a charitable gift was in violation of the rule against perpetuities we said (at page 645) : "The argument on this point is somewhat extended, but the controversy between counsel for the respective parties arises rather from the different constructions placed upon the will than from conflicting views of the law. It is insisted on behalf of appellants, that while it is generally said by text writers and courts, that the law against perpetuities does not apply to conveyances, or bequests to charity, all that is meant by that language, is: 'that after property once legally gets to a charity, the charity can thereafter hold it for all time, *i.e.,* in perpetuity, but does not apply to property before it gets to the charity,' and the argument proceeds upon the theory, that under the qualification of the general rule thus stated, gifts to charity, before they become vested, are subject to the rule against perpetuities, the same as are gifts to individuals. The authorities cited in support of this position do not sustain it."

In the same opinion we announced what we considered to be the correct rule, quoting from Perry on Trusts, vol. 2, sec. 736 (opinion p. 646) : " 'If a testator ties up his property for a time, by possibility longer than a life or lives in being and twenty-one years and nine months, and then gives it over to a charity, the gift to charity is void, *because of the perpetuity in the first taker.'* " We also

quoted with approval the language of Bispham, in his Principles of Equity, sec. 132: " 'If, however, the charitable trust is not to vest until after the determination of the prior gift, and that prior gift may by possibility last longer than the time allowed by law, the gift over to charity will be void, *because of the perpetuity in the first taker.'* " Likewise, in *Ingraham* v. *Ingraham,* 169 Ill. 432, at page 451, we said: "In *Crerar* v. *Williams,* 145 Ill. 625, the position was taken that 'gifts to charity, before they become vested, are subject to the rule against perpetuities the same as are gifts to individuals;' and we there said: 'the authorities cited in support of this proposition do not sustain it.' "

But conceding that the rule applies to the vesting of estates charitable in nature, it cannot operate to defeat the gift now in question for the reason that it is vested and not contingent. Considering the whole will, it is evident that testator intends a gift *in praesenti* to trustees in trust to carry out the provisions of his will, including the charitable provisions of the eleventh and twelfth clauses as well as the earlier provisions for his sister and half-sisters. All rules as to the vesting of estates are subject to the rule of first importance in the construction of wills that it is the intention of the testator as expressed in the will which must govern. (*Easton* v. *Hall,* 323 Ill. 397.) In *Crerar* v. *Williams,* 145 Ill. 625, at 649, this court quoted with approval from Gray on Perpetuities, sec. 607, where it was said: " 'But if the court can see an intention to make an unconditional gift to charity (and the court is very keen-sighted to discover this intention,) then the gift will be regarded as immediate, not subject to any condition precedent, and, therefore, not within the scope of the rule against perpetuities.' "

By the thirteenth clause of his will testator appoints the two persons named "my trustees and executors to carry out and execute the provisions of this will." The fact that this is the last clause of the will, and that the directions

as to the disposition of the fund precede it, does not warrant a conclusion other than that it is the intention of the testator to make a present gift to the trustees to carry out the purposes expressed. By the eleventh clause testator directs that the residue of his estate be given for the erection of the school building "provided, however, that said Board of Education shall contribute an equal amount toward such building and equipment. The said Board of Education must meet the above conditions in a reasonable length of time." This is the condition in the will which counsel contend renders the gift contingent. The will by its express terms requires that the condition be met within a reasonable length of time. This court, by its decision in *Booth* v. *Krug*, 368 Ill. 487, has already approved the construction that these words are intended to mean "within a reasonable time after the death of the testator," but that under the circumstances such reasonable time should not be held to have elapsed until the ending of the estates for life makes the fund available. This was the exact construction placed upon the words by the trial court and affirmed on appeal. The construction that the words mean a reasonable time after testator's death is consistent only with the view that the charitable beneficiaries took a vested interest upon testator's death and that it was testator's intention that the gift should vest at that time. Nor do the words "provided, however, that said Board of Education shall contribute an equal amount toward such building and equipment," manifest an intention on the part of the testator that the gift is not to vest until that event occurs. Nowhere does the testator make the gift conditional upon the contribution. He directs that an equal amount shall be contributed within a reasonable time, but he does not use any words that indicate an intention that the board is to take only if the amount is contributed. The words used amount to nothing more than a direction as to the manner of carrying out the purposes of the will. It is true that

the words may impose a condition precedent as to the time and manner of the enjoyment of the gift, but they are not to be construed as imposing a condition to vesting. We would have to read into the will of the testator words which are not there in order to arrive at that result. Our conclusion is strengthened by the fact that there is no gift over on failure to meet the condition. A construction of a will which will lead to an intestacy is never favored; a presumption against intestacy arises from the making of a will, and this presumption is so strong that the courts will adopt any reasonable construction of a will to avoid it. (*Booth* v. *Krug,* 368 Ill. 487.) Our conclusion is that the gift for charitable purposes provided for in the eleventh and twelfth clauses of the will vested upon the death of the testator in the object of his charity and that the gift is, therefore, not subject to the rule against perpetuities. The gift was vested in interest though not in possession and enjoyment and the finding of the trial court in the earlier case of *Booth* v. *Krug* that the condition was precedent referred only to the actual enjoyment and use of the gift. We believe that what has been said here was implicit in our former opinion in *Booth* v. *Krug* from the construction there placed upon the language of the will.

Since the gift was vested, it must follow that Community Unit District No. 4 became entitled thereto as successor to District No. 13. Under the provisions of section 8-13 of the School Code, (Ill. Rev. Stat. 1951, chap. 122, par. 8-13,) upon the organization of any territory into a community unit district, all old school districts within the territory are automatically dissolved and the board of the new district is given the same powers and duties as theretofore exercised by the boards of any districts dissolved, including the establishment of a school or schools best located to serve the pupils of the district with a program of studies extending through grades one to twelve, inclusive. Section 14-1 of the School Code (Ill. Rev. Stat. 1951, chap. 122, par.

14-1,) provides that where any devise or bequest of real and personal property has been or shall be directly or indirectly made to or for the use of any such public school district, such property shall be vested in the school board of that district. There can be no question that the title to the old school and school site of former District No. 13 passed over to and became vested in the new district and its board. No reason appears why a vested interest in a trust fund should not likewise pass over to and become vested in the new district. This court has recognized that the obligations of the old districts, including their bonded indebtedness, become the obligations of the new unit district, and that taxes may be levied and extended against all the property embraced in the new district to meet those obligations. (*People ex rel. Moore* v. *Chicago, Burlington & Quincy Railroad Co.* 414 Ill. 419.) This result was reached under section 19-32 of the School Code, (Ill. Rev. Stat. 1949, chap. 122, par. 19-32,) and the well-settled rule that where two or more municipal corporations are consolidated, or the entire territory of one is annexed to another, the contracts and indebtedness of the corporations which are consolidated or annexed become the contracts and indebtedness of the consolidated or annexing corporation. In that case we also observed that the resulting municipal corporation includes the persons and places of the several municipalities, and that it has the same property and owes the same debts which they all had and owed. After the creation of the new district it became the duty of that corporation to afford the inhabitants of the old district the same educational advantages they had enjoyed in the past. The evidence shows that that has been done; that the grade school in Enfield is conducted in the same building as formerly and serves substantially the same people. We conclude, therefore, that upon the creation of Community Unit District No. 4, its board of education became the lawful owner of all the property and of any interest

therein formerly owned and held by District No. 13, including the vested interest in the trust under the will of Walter S. Booth, and that it is entitled thereto as of right, as contended in the alternative by appellees in the court below.

But the trial court found that due to the change of districts it had become impossible to carry out the eleventh and twelfth clauses of the will in the exact manner stated; that the purposes expressed could be substantially carried out and that the doctrine of *cy pres* was applicable under the facts appearing. The court further found that the provisions of the will manifested a general charitable intent and purpose on the part of the testator and that the gift should be sustained *cy pres*. While we do not agree that it was necessary to apply the *cy pres* doctrine under the situation here presented, we are well aware that the line of demarcation between situations where the courts find it necessary and proper to apply the doctrine and those where it may be unnecessary or improper is difficult of ascertainment. (See: *First Nat. Bank* v. *Elliott,* 406 Ill. 44, 62.) Assuming that the application of that doctrine here was necessary to preserve the trust, we find no difficulty in agreeing with the result.

The favor with which courts generally regard charitable trusts has often been manifested by this court. (*First Nat. Bank* v. *Elliott,* 406 Ill. 44; *Morgan* v. *National Trust Bank,* 331 Ill. 182; *Bruce* v. *Maxwell,* 311 Ill. 479; *Hunt* v. *Fowler,* 121 Ill. 269; *Heuser* v. *Harris,* 42 Ill. 425.) Equity always considers the general charitable purpose of the testator or donor as the substance of the gift, the mode pointed out for effectuating the purpose being merely an incident of the gift. (*Village of Hinsdale* v. *Chicago City Missionary Society,* 375 Ill. 220; *Franklin* v. *Hastings,* 253 Ill. 46; *Crerar* v. *Williams,* 145 Ill. 625; *Heuser* v. *Harris,* 42 Ill. 425.) Where literal execution of the charitable gift is impossible, impractical or inexpedient, and a

general charitable purpose to devote the property to such purposes is apparent, the trust will not be permitted to fail but will be executed by the court *cy pres*. (*First Nat. Bank v. Elliott*, 406 Ill. 44; *Board of Education v. City of Rockford*, 372 Ill. 442; *Mason v. Bloomington Library Ass'n*, 237 Ill. 442; *Kemmerer v. Kemmerer*, 233 Ill. 327.) The definition of *cy pres* given in The Restatement of the Law of Trusts (vol. II, sec. 399,) and adopted by this court in *First Nat. Bank v. Elliott*, 406 Ill. 44, 56, is stated: " 'If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail, but the Court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.' " Bogart in his work on Trusts (vol. 2, sec. 428, page 239,) illustrates the rule thus: "Thus, in the states where the *cy pres* doctrine is in force, if a fund is left in trust to aid poor scholars in school district No. 1 to get a common school education, and that school district is abolished, there is ordinarily no resulting trust for the settlor or his successors. The property is not returned to the donor if he be living, or to his heirs or next of kin in case he is dead. The charitable trust for educational purposes will be enforced by *cy pres*. The court will find that the settlor intended to aid education in general, through the medium of the scholars in this region, and that the abolition of the district should be no bar to a continuance of the trust. The fund would doubtless be applied to aid children in the same general vicinity, or in the new district which included the old." And in The Restatement of the Law of Trusts, vol. II, page 1217, we find the following language: "If property is given in trust to be applied for the support of a particular charitable institution, and the institution subsequently merges with

another institution established for similar purposes, the court will permit the application of the property for the new institution, unless the settlor manifested an intention to restrict his gift to the institution which he named. So also, where the institution ceases to exist, the court will permit an application of the property *cy pres,* unless the settlor manifested an intention to restrict his gift to the institution which he named."

The foregoing citations and quotations emphasize the condition that a general intention to devote the property to charitable purposes must be found before a court is warranted in sustaining the gift by application of *cy pres.* It is seriously contended by appellants that such general charitable intention is not manifest in the will of Walter S. Booth; that the will shows an intention to benefit only District No. 13 as a district and nothing more. We cannot agree. We believe that the general charitable purpose of the testator is clearly stated in the language of the eleventh clause of his will when he says: "for the erection and equipment of a building in said village of Enfield for the use of said Public Schools." The same intent is manifest in the language "for the improvement and upkeep of the Public Schools of the Village of Enfield" found in clause twelve. It is true that the gift is "to the Board of Education of the Public Schools of the Village of Enfield, White County, Illinois, known as District Number Thirteen (13)" but these words merely designate a repository of the gift and are not to be considered as limiting the broad charitable purpose for which the gift was made as stated in the same clause. The objects of the charity are neither the board nor the school district but the inhabitants of that territory; more particularly the children and scholars for whose benefit the bequest is made. Can it be seriously contended that had the territory of the district as it existed at the time testator made his will remained the same, and only the number of the district changed, the gift

would fail? Yet that, we believe, is the logic of appellants' position. What changes in area, boundaries, political organization or official designation of a school district will cause it to lose a gift intended for it and yet prevent its successor from receiving that gift? Suppose that the name and designation of the district remained the same, but that it was expanded or contracted geographically. How far would such changes have to go before it could be said that the district was a new district entitled to take the gift neither as successor nor by *cy pres?* We believe that there is no expressed intention on the part of the testator to limit the gift only to an entity answering the description of School District No. 13 in White County, or to the board of education of such district. The words "known as District Number Thirteen (13)" themselves repel that idea. They carry the thought that while the district is known by that number at the time of the execution of the will it may have a different number or designation later. As a school man and particularly an administrative school man, testator must have adverted to that possibility and so clearly stated that the purpose of his gift was "the erection and equipment of a building in said Village of Enfield for the use of said Public Schools."

We are impressed by the nearly exact manner in which the purposes as expressed by the testator can be carried out in this case. The school building can be built on the exact location in the village of Enfield contemplated by the testator. It will serve the very purposes intended and benefit the very persons testator had in mind when he made his will. The new district, though maintaining a high school, has kept its facilities separate; an Enfield grade-school attendance unit has been established and the very building which testator doubtless realized would need to be replaced is in use. The plans call for the erection of the new building on this site. Community Unit District No. 4 is the only body capable of carrying out the purpose and it has

the funds available to do so. This court would indeed be remiss in its duty if the trust were allowed to fail under the facts presented. We have gone much further than required under the facts of this case to sustain the purposes of a charitable gift. See, for example: *Board of Education v. City of Rockford,* 372 Ill. 442; *Trustees of Rush Medical College v. University of Chicago,* 312 Ill. 109; and *Village of Hinsdale v. Chicago City Missionary Society,* 375 Ill. 220.

We conclude that the decision of the trial court directing that the trustee turn over the remaining funds and property to the board of education of Community Unit District No. 4, to be used to carry out the charitable purposes expressed, is correct. We note that the decree expressly directs that the amount paid, together with a like amount of its own money, be held by the board in trust to pay for the erection and equipping of a new grade-school building in Enfield at the site of the present building, thus exactly carrying out the wishes of the testator and his directions as to the employment of his own and school funds to accomplish the result. The decree will be affirmed.

*Decree affirmed.*